COMMONWEALTH *vs.* GERALD RIVKIN.

Hampshire.    October 28, 1952. — December 31, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Health, Board of.    Public Health.    Regulation.*

A regulation adopted by a municipal board of health under what is now
G. L. (Ter. Ed.) c. 94, § 146, and providing that "No person shall sell,
offer or expose for sale ice cream in any form on any street, sidewalk,
or other public place" was beyond the regulatory authority conferred
on the board by the statute and void in so far as it concerned sales of
ice cream.

COMPLAINT, received and sworn to in the District Court of
Hampshire on July 19, 1951.

Upon appeal to the Superior Court, the case was heard
without jury by *Hobson,* J., a District Court judge sitting
under statutory authority.

In this court the case was submitted on briefs.

*Samuel L. Fein & Frank H. Freedman,* for the defendant.

*Sanford Keedy,* District Attorney, *& Oscar Grife,* Assistant District Attorney, for the Commonwealth.

RONAN, J.    The defendant was convicted and fined upon
a complaint charging that he "unlawfully did sell, offer and
expose for sale certain ice cream on the streets and sidewalks
or public places in said Northampton" in violation of a
regulation of the board of health of that city.   The judge
stayed the execution of the sentence, and at the request of
the parties reported the case to this court with the stipulation that if the finding of guilty was warranted by law the
defendant should stand convicted, otherwise the conviction
is to be set aside and the defendant discharged.

The regulation was adopted by the local board of health
on December 7, 1914, in accordance with the provisions of
St. 1914, c. 627, which amended St. 1912, c. 448, the original

enactment.  The pertinent portions of these statutes conferring a regulatory power on local boards of health have remained unchanged through all subsequent amendments, and provide that "Local boards of health . . . may make and enforce reasonable rules and regulations as to the conditions under which all articles of food may be kept or exposed for sale, in order to prevent contamination thereof and injury to the public health."  G. L. (Ter. Ed.) c. 94, § 146.  The regulation reads as follows: "Section 3.  No person shall sell, offer or expose for sale ice cream in any form on any street, sidewalk, or other public place."

The statement of agreed facts upon which the case was submitted to the trial judge states that "The defendant made a sale of ice cream on a public way in the city of Northampton on July 17, 1951."  That is all that the defendant did.  He was a hawker and pedler and held a State license. There is nothing contained in the report of the judge to show, directly or inferentially, that the defendant did anything with reference to the ice cream prior to its sale.  A local regulation in derogation of property rights or impairing a right granted by a statute and penal in nature is not to be extended beyond its plain import and is generally to be strictly construed.  *Commonwealth* v. *Hayden*, 211 Mass. 296, 297.  *Greene* v. *Mayor of Fitchburg*, 219 Mass. 121, 125. See *Commonwealth* v. *Beck*, 187 Mass. 15; *Wyeth* v. *Cambridge Board of Health*, 200 Mass. 474.  There is not a word in either brief concerning any offer or exposure for sale by the defendant.  The case was based upon that part of the regulation which prohibited the sale, leaving open the question whether a regulation going to this extent is valid.  We confine our discussion to the question whether the making of the sale alone was sufficient ground for the defendant's conviction for an alleged violation of the regulation.

The regulatory power of the board of health was measured and limited by the enabling statute which delegated the power to make rules relative to the manner in which food should be kept or exposed for sale.  The object of such rules was to prevent the contamination of food intended for sale

Commonwealth *v.* Rivkin.

by prescribing the sanitary conditions under which it was to be kept and exposed for sale. *Commonwealth* v. *E. E. Wilson Co.* 241 Mass. 406. The statute said nothing about regulating the sale of food. It concerned itself entirely with a situation existing before sales were consummated. Any doubt that the sales of food did not come within the enabling statute is dispelled when we consider that at the time of its enactment it was a familiar sight to see sidewalk stands outside of stores, exhibiting fruit and berries which were protected from dust and dirt by a covering of mosquito netting and from flies and insects by colored streamers flowing over the stands and kept in motion by a draft generated by an electric fan. It was to this situation that the legislation was directed. Legislation is to be considered in the light of existing conditions. *Commonwealth* v. *Strauss*, 191 Mass. 545, 553. *Opinion of the Justices*, 251 Mass. 569, 600. That the object of the enabling statute was to prevent the exhibition and exposure of food in such a manner as to result in contamination is further exemplified by the express provision contained in the enabling statute, St. 1914, c. 627, and since continued in it as it appears in its present form, G. L. (Ter. Ed.) c. 94, § 146, to the effect that no regulation adopted under it shall be construed to prevent the exposure of food articles for sale on Saturdays and days preceding holidays in the Boston "market limits" as defined by the ordinances of Boston except in any area in said limits where on June 6, 1914, it was necessary to secure a permit from the board of health to expose goods for sale.[1]

It was said in *Leahy* v. *Inspector of Buildings of New Bedford*, 308 Mass. 128, 131, "But the Legislature could determine the extent of the power granted to these municipalities and prescribe the terms and conditions under which it could be exercised, and action taken beyond the authority conferred or not in compliance with the terms and conditions governing its exercise would be invalid." We, therefore,

---

[1] Apparently street vendors selling food from carts or vehicles in the market limits except in certain areas therein were unaffected by the statute or by any regulations that might be made thereunder. See St. 1921, c. 191.

conclude that the regulation prohibiting sales transcends the authority conferred upon the board of health by the statute, and that that portion of the regulation is void. *Newton* v. *Belger*, 143 Mass. 598. *Winthrop* v. *New England Chocolate Co.* 180 Mass. 464. *Cawley* v. *Northern Waste Co.* 239 Mass. 540. *Commonwealth* v. *Hayden*, 211 Mass. 296. *Goldstein* v. *Conner*, 212 Mass. 57. *Commonwealth* v. *Badger*, 243 Mass. 137. *North Reading* v. *Drinkwater*, 309 Mass. 200. *122 Main Street Corp.* v. *Brockton*, 323 Mass. 646.

It is plain from the report that the conviction was based entirely upon the void portion of the regulation and cannot stand. *Commonwealth* v. *Atlas*, 244 Mass. 78, 82. *Goldstein* v. *Conner*, 212 Mass. 57, 59.

The Commonwealth is not aided by the fact that a board of health possesses power to regulate matters affecting the public health which arise from nuisances, sources of filth, and causes of sickness by virtue of what is now G. L. (Ter. Ed.) c. 111, § 122, as the regulation in question was not based upon that section but was attempted to be based on St. 1914, c. 627. Neither can the regulation be justified by the broad and general powers conferred upon boards of health by G. L. (Ter. Ed.) c. 111, § 31, as amended by St. 1937, c. 285, providing that "Boards of health may make reasonable health regulations." This grant of power was not conferred upon boards of health until St. 1920, c. 591, § 17. No regulation under this section governing sales of food appears to have been adopted by the board of health of Northampton and none was published as required by this section. The board so far as now material does not seem to have exercised any authority under § 31. The regulation was void in so far as it related to sales. A regulation beyond the enabling act then in force does not become valid by the subsequent enactment of an enabling act which is broad enough to support a similar regulation if one should be adopted under it. "A subsequent grant of such authority, without more, does not serve to validate the measure." *Edwards* v. *Mayor & Council of Moonachie*, 3 N. J. 17, 21. *People* v. *Thompson*, 377 Ill. 104. *McGillic* v. *Corby*,

37 Mont. 249. *People* v. *Shoen*, 142 Misc. (N. Y.) 788. *People* v. *Hall*, 165 Misc. (N. Y.) 129.

There was error in denying the defendant's request for a finding of not guilty, and in accordance with the stipulation the finding of guilty is reversed and the defendant discharged.

*So ordered.*