EASTERN CAROLINA TASTEE-FREEZ, INC. v. CITY OF RALEIGH.

(Filed 12 January, 1962.)

**1. Municipal Corporations § 4—**

A municipal corporation is a creature of the General Assembly and has only such powers as are expressly conferred upon it by statute or such as are necessarily implied from those expressly conferred.

**2. Municipal Corporations § 24—**

Where a peddler of ice cream and similar products from a mobile freezer unit along the streets and highways has procured from the State a license to carry on such business within territory which includes a municipality, G.S. 105-53(d), the municipality has no authority by provision attached to its license ordinance, to prevent such licensee from peddling his products along the city streets. Whether the municipality has the power, in the interest of public safety, to prohibit the peddling of merchandise from mobile units along its streets and whether a municipal ordinance may be tested by procedure under the Declaratory Judgment Act, *quaere?*

APPEAL by plaintiff from *Copeland, Special Judge,* August 1961 Special Term of WAKE.

Plaintiff's action, instituted under the Declaratory Judgment Act (G.S. 1-253 *et seq.*), is to declare invalid and to enjoin the enforcement, insofar as it prohibits the peddling of ice milk or ice cream by mobile units, this portion of Section 105, Chapter 14, of the City Code of Raleigh, to wit:

"No ice cream shall be peddled along the streets and/or sidewalks of the city from push carts or other vehicles or in any other manner."

Plaintiff is a North Carolina Corporation with principal office in Raleigh. Its business includes the sale of ice milk (in the form of cones, sandwiches, milk shakes, sundaes and in packages) from mobile freezer units along the streets and highways of North Carolina. On or about May 11, 1961, plaintiff, desiring to sell and dispense said products to the public from such freezer unit along the streets of Raleigh, applied to the City Collector of Revenue for a peddler's license and tendered the prescribed fee. The City Collector refused to issue such license. Thereafter, on May 15, 1961, plaintiff presented its request to the City Council. The City Council, based solely on the quoted portion of Section 105, Chapter 14, of the City Code, denied plaintiff's request and refused to order the issuance of such license.

In the pleadings, plaintiff attacked the quoted ordinance provision as unauthorized and unconstitutional, and defendant asserted its validity as an authorized and constitutional exercise of the police power.

The parties waived jury trial. G.S. 1-184.

Plaintiff offered evidence describing its one-ton Chevrolet mobile units; the manner in which it now operates thirty-seven such units in its franchise area; the precautions taken to prevent injury, such as construction so that customers can be served only on the right-hand or curb side, the display of caution signs and careful operation at slow speed; and its record of safe operations.

Defendant's evidence consisted of the testimony of witnesses who had observed the operation of similar mobile units (but not those of plaintiff) in other towns and communities. In substance, this testimony was to the effect that the approach of such mobile unit, announced by the ringing of bells or other signal, causes young children to become excited and (absent advance arrangement) press their parents for money to make purchases; that children hurry to (crossing streets) and congregate about the place where such mobile unit is parked; and that the approach of such mobile unit and its special appeal to small children in the manner indicated creates a hazard to them and to other persons and traffic lawfully using the street.

After hearing the evidence, the court made findings of fact, conclusions of law and entered judgment as follows:

## "FINDINGS OF FACT

"1. That the operation of mobile ice cream dispensing units attracts children into the public streets and constitutes a menace to the public safety.

"2. That assembly of people in the public streets for the purpose of purchasing products dispensed by mobile ice cream units impedes or tends to impede motor vehicle traffic upon the public streets.

"3. That the ordinance attacked by the plaintiff in this action does not discriminate against persons in the same class.

"4. That the ordinance prohibiting the peddling of ice cream on the streets of Raleigh has a substantial relation to the preservation of the public safety but not to the public health.

## "CONCLUSIONS OF LAW

"Upon the foregoing findings of fact, the Court makes the following Conclusions of Law:

"1. That the ordinance does not violate any constitutional provision and is a valid exercise of the legislative powers conferred upon the City of Raleigh.

## "JUDGMENT

"Upon the foregoing findings of fact and conclusions of law, it is considered, ordered and adjudged that the ordinance which is the subject of this action is a valid ordinance, and this action is dismissed at the cost to the Plaintiff."

Plaintiff, based on its exceptions to each finding of fact and to the conclusion of law, excepted to the judgment and appealed.

*Blanchard & Farmer for plaintiff appellant.*
*Paul F. Smith for defendant appellee.*

BOBBITT, J. A State license tax is imposed on peddlers by G.S. 105-53. Under authority conferred by G.S. 105-53(g), the City of Raleigh, by Section 145, Chapter 14, of its City Code, imposed a city license tax on peddlers. Neither the authority of the City of Raleigh to impose such license tax nor the amount thereof is challenged by plaintiff.

Chapter 14 of the City Code of Raleigh is entitled, "The License Tax Ordinance of the City of Raleigh." Section 145 thereof imposes a license tax on peddlers of "any goods, wares or merchandise." Plaintiff applied for such license and tendered payment of the prescribed license tax. No specific reference to ice cream or ice milk appears in said Section 145 or in G.S. 105-53.

G.S. 105-33(a) provides that State license taxes are imposed "for the privilege of carrying on the business, exercising the privilege, or doing the act named." G.S. 105-33(d) provides that the State license issued under G.S. 105-53, that is, on "(a)ny person, firm, or corporation who or which shall carry from place to place any goods, wares, or merchandise, and offer to sell or barter the same, or actually sells or barters the same," (the statutory definition of peddler), *"shall be and constitute a personal privilege to conduct the profession or business named in the State license,* shall not be transferable to any other person, firm or corporation and shall be construed to limit the person, firm or corporation named in the license to conducting the profession or business and exercising the privilege named in the State license to the county and/or city and location specified in the State license, unless otherwise provided in this article or schedule." (Our italics)

It is noted that G.S. 105-33(a) provides, in part, that "the obtaining of a license required by this article shall not of itself authorize the practice of a profession, business, or trade for which *a State qualification license* is required." (Our italics)

Provisions for the regulation of traffic on the streets are set forth

in Chapter 21 of the City Code of Raleigh, designated "Traffic Code of the City of Raleigh."

Section 105 of Chapter 14 of the City Code of Raleigh is captioned, "Ice cream manufacturers." Paragraph (a) prescribes the license tax required of manufacturers and wholesale distributors of ice cream. Paragraph (b) provides that the words "ice cream," as used in said section, "shall apply to ice cream, frozen custards, sherbets, water ices, or similar products." Paragraph (c) prescribes the license tax required of certain retail dealers. *Then follows, in a separate and final paragraph without special designation by letter or number, the ordinance provision now attacked by plaintiff.* It is noted that G.S. 105-97, captioned "Manufacturers of ice cream," which imposes a State license tax, is in substantially the same phraseology as Section 105 of Chapter 14 of the City Code of Raleigh, with these exceptions: (1) The amount of license tax imposed is different, and (2) G.S. 105-97 does not contain any provision similar to the ordinance provision now attacked by plaintiff.

The provision that "(n)o ice cream shall be peddled along the streets and/or sidewalks of the city from push carts or other vehicles or in any other manner," now the final paragraph and sentence of Section 105 of Chapter 14 of the City Code of Raleigh, was adopted on some (undisclosed) date prior to 1950. Its direct reference to "push carts" suggests it was adopted at least as far back as the horse and buggy era. It purports to prohibit peddling of ice cream in any manner along the streets or sidewalks of Raleigh. Was the peddling of ice cream prohibited as a health measure at a time when present methods of refrigeration were unknown? Suffice to say, there is no legislative declaration or evidence as to when or why this ordinance provision was adopted.

We interpret the ordinance provision attacked by plaintiff as an absolute prohibition of the peddling of ice cream in any manner along the streets or sidewalks of Raleigh. Thus, it purports *to prohibit* a person, firm or corporation from exercising the privilege granted by the State license.

A municipal corporation is a creature of the General Assembly. Municipal corporations have no inherent powers but can exercise only such powers as are expressly conferred by the General Assembly or such as are necessarily implied from those expressly conferred. *Davis v. Charlotte*, 242 N.C. 670, 89 S.E. 2d 406; *S. v. Scoggin*, 236 N.C. 1, 8, 72 S.E. 2d 97.

As stated above, a State license issued under G.S. 105-53 authorizes the licensee (G.S. 105-33(d)) to engage in the business of peddling. These other statutory provisions are noted. G.S. 112-35, in part, pro-

vides: "All ex-Confederate soldiers who are without means of support other than their manual labor, and who are incapacitated to perform manual labor for any reason other than by their vicious habits, and now citizens of this State, shall be allowed to peddle drugs, goods, wares, and merchandise in any of the counties of this State without a license therefor." G.S. 14-238, in part, provides: "No person, agent, representative or salesman shall solicit or attempt to sell or explain any article of property or proposition to any teacher or pupil of any public school on the school grounds or during the school day without having first secured the written permission and consent of the superintendent, principal or person actually in charge of the school and responsible for it." G.S. 81-10 provides for the inspection, under the direction of the State Superintendent of Weights and Measures, of products offered for sale by peddlers.

The conclusion reached is that the City of Raleigh cannot, by ordinance, *prohibit* conduct that is legalized and sanctioned by the General Assembly. Hence, the ordinance provision attacked by plaintiff must be and is declared invalid on the ground it is in conflict with the general State law. *Davis v. Charlotte, supra,* and cases cited.

Whether the City Council of Raleigh, under the powers conferred by general statutes or by the Charter of the City of Raleigh, *has authority to enact* an ordinance prohibiting or regulating, based on considerations of public safety, the use of its streets by mobile units for the sale of ice cream or other products is not considered or determined. Such an ordinance is not before us. Hence, we do not discuss constitutional questions to be considered in passing upon the validity of such an ordinance. In this connection, see decisions cited in Annotations, "Authorization, prohibition, or regulation by municipality of the sale of merchandise on streets or highways, or their use for such purpose," 105 A.L.R. 1051, 163 A.L.R. 1334, and decisions supplemental thereto.

It is noted that the violation of a (valid) municipal ordinance is a misdemeanor. G.S. 14-4; *S. v. Barrett,* 243 N.C. 686, 91 S.E. 2d 917, and cases cited. There is no evidence plaintiff has engaged in any act violative of the ordinance provision now in controversy. Plaintiff's action is for a declaratory judgment to ascertain whether *what it proposes to do* would be an illegal act. While defendant makes no contention that plaintiff is not entitled, by an action under the Declaratory Judgment Act, to an adjudication as to the validity of the ordinance provision now in controversy, it is appropriate to say that consideration of the question as to whether an action under the Declaratory Judgment Act is an appropriate procedure in circumstances such as those here considered is deferred until directly presented for decision.

Being of the opinion, for the reasons stated, that the ordinance provision here considered, to wit, the last paragraph and sentence of Section 105 of Chapter 14 of the City Code of Raleigh is invalid, the judgment of the court below is reversed.

Reversed.