STATE v. CARVUS A. BYRD, JR.

(Filed 27 March 1963.)

**1. Municipal Corporations § 4—**

 Municipal corporations have only those powers expressly conferred upon them by the General Assembly and those necessarily implied from those expressly conferred.

**2. Same; Municipal Corporations § 28— Municipality held without authority to prohibit sale of ice cream products from mobile units on streets.**

 The statutory delegation of power upon municipalities to regulate traffic upon their streets and sidewalks, G.S. 160-200(11), G.S. 160-200(13), and to prohibit nuisances detrimental to the health, morals, comfort, safety, convenience, and welfare, G.S. 160-200(6), *held* not to empower a city to prohibit the sale and offering for sale of merchandise upon its streets from mobile units by persons licensed by the State to carry on the lawful business of peddling, G.S. 105-53 (a), (c), (d), although a city may have authority to regulate such sales, and therefore a municipal ordinance proscribing the sale or offering for sale at any time to any person of any ice cream products from any mobile unit on any street or alley of the municipality is invalid.

APPEAL by the State from *Fountain, J.,* May Criminal Term 1962 of WAKE, docketed and argued as No. 436 at Fall Term 1962.

Criminal prosecution on warrant charging that defendant on April 25, 1962, unlawfully and wilfully offered for sale and sold ice cream

from a mobile ice cream unit truck on Newbold Street, a public street of Raleigh, North Carolina, in violation of an ordinance adopted February 26, 1962, by the City Council of the City of Raleigh entitled "An Ordinance to Regulate the Sales of Ice Cream and Ice Cream Products in the City of Raleigh."

The operative provisions of the ordinance are as follows:

"Section 1. It shall be unlawful for any person, firm or corporation to sell or offer to sell on the streets or alleys of the City of Raleigh any ice cream products from mobile ice cream units.

"Section 2. It shall be unlawful for any person, firm or corporation to sell or offer to sell on the streets, sidewalks or alleys of the City of Raleigh any ice cream products in any manner.

"Section 3. The term ice cream products shall apply to ice cream, frozen custards, sherbets, ice milk, water ices or similar frozen or semi-frozen articles.

"Section 4. The provisions of this ordinance shall not be construed to prohibit the sale of ice cream from door to door or in any other manner permitted by law if no sale or delivery is made on a public street, alley or sidewalk.

"Section 5. If any section, subsection, sentence, clause, phrase, or part of this ordinance is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion will be deemed a separate, distinct independent provision and such holding shall not affect the validity of the remaining portions hereof.

"Section 6. All ordinances and clauses of ordinances in conflict with this ordinance are repealed.

"Section 7. This ordinance shall become effective twenty days after its publication as provided by law."

In the City Court of Raleigh, defendant's motion to quash the warrant was overruled. Thereafter, upon trial, defendant was adjudged guilty and ordered to pay a fine and costs. Defendant appealed.

In the superior court, defendant in apt time moved to quash the warrant on the ground the ordinance on which it is based is invalid for reasons set forth with particularity in said motion.

The court, being of opinion defendant's motion should be allowed, "ORDERED that the warrant be and the same is hereby quashed." The State (G.S. 15-179(3) ) excepted and appealed.

*Attorney General Bruton and Assistant Attorney General Bullock for the State.*

*Blanchard & Farmer for defendant appellee.*

BOBBITT, J.     In *Tastee-Freez, Inc. v.. Raleigh,* 256 N.C. 208, 123
S.E. 2d 632, filed January 12, 1962, the ordinance provision then con-
sidered provided: "No ice cream shall be peddled along the streets
and/or sidewalks of the city from push carts or other vehicles or in
any other manner." This ordinance provision was held in conflict with
general State law and therefore invalid.

The ordinance now under consideration was adopted February 26,
1962, at the conclusion of a public hearing conducted by the City
Council. The preamble contains extensive recitals as to the substance
of *comments* and *contentions* made at such public hearing by (un-
identified) persons favoring or opposing the adoption of an ordinance
"regulating the sales of ice cream and ice cream products in the City
of Raleigh." Thereafter the preamble continues:

"Upon the evidence presented, the Council finds the following facts:

"1.   The sale of ice cream and ice cream products from mobile ice
cream units upon street rights of way attracts children on and across
those streets and into the area of the street which has been set aside
primarily for the use of vehicles and constitutes a serious hazard to
the safety of children. The sale of ice cream products in any other
manner on the street rights of way without the use of chimes, bells or
music to attract notice tends to a lesser but to a real degree to at-
tract children into the streets and jeopardizes their safety.

"2.   That the attraction of children through the sale of ice cream
and ice cream products on the streets, alleys and sidewalks constitutes
or tends to constitute an obstruction to traffic and tends to prevent
its free and safe flow on a part of the street reserved primarily for
such traffic.

"3.   That the ringing of bells and chimes upon the approach of a
mobile ice cream unit and the continued ringing of the bells or chimes
while the mobile unit is parked for the purpose of dispensing its
product constitutes a nuisance to the peace and quiet of the neigh-
borhood and unnecessarily disturbs the residents of the neighborhood.

"4.   That the very nature of the business of selling ice cream prod-
ucts from mobile units on the public streets is such that its success
depends in large measure upon the number of customers it can at-
tract to its dispensing unit and the ringing of bells or chimes and
the playing of music is directed to this end.

"5.   That no such business has a right to demand that the public
streets be made available to private business for personal profit at
the expense of the safety and peace and tranquillity of the citizens of
a municipality.

"6. That it does not appear from the evidence presented or from the personal observation of the members of the City Council that peddling coal, farm produce, bottled drinks, ladies ready-to-wear or other similar articles has an appeal to children or presents any hazard to their safety.

"Upon the facts found, the Council concludes that in the interest of public safety and particularly the safety of children and in the interest of the general welfare that it should adopt an ordinance regulating the sale of ice cream within the City of Raleigh by prohibiting such sale on the streets, sidewalks and alleys of the City of Raleigh but that such ordinance should not prohibit the sale of such products by peddling from door to door provided no sales or deliveries are made upon the public streets, sidewalks or alleys of the City."

Since the conduct alleged in the warrant constitutes a violation of Section 1 of the ordinance of February 26, 1962, decision depends upon the validity of this ordinance provision.

G.S. 105-33(a) provides that State license taxes are imposed "for the privilege of carrying on the business, exercising the privilege, or doing the act named." G.S. 105-33(d) provides that the State license issued under G.S. 105-53, that is, on "(a)ny person, firm, or corporation who or which shall carry from place to place any goods, wares, or merchandise and offer to sell or barter the same, or actually sells or barters the same," (the statutory definition of peddler), *"shall be and constitute a personal privilege to conduct the profession or business named in the State license,* shall not be transferable to any other person, firm or corporation and shall be construed to limit the person, firm or corporation named in the license to conducting the profession or business and exercising the privilege named in the State license to the county and/or city and location specified in the State license, unless otherwise provided in this article or schedule." (Our italics) A State license issued under G.S. 105-53 authorizes the licensee (G.S. 105-33(d) ) to engage in the business of peddling. Hence, under general State law, "peddling," as defined in G.S. 105-53, is a lawful business or occupation. Moreover, the statutory provisions contemplate the use of motor vehicles by peddlers in the prosecution of their business or occupation. See G.S. 105-53(a) and (c), also G.S. 105-53(d).

Municipal corporations have no inherent powers but can exercise only such powers as are expressly conferred by the General Assembly or such as are necessarily implied from those expressly conferred. *Tastee-Freez, Inc. v. Raleigh, supra,* and cases cited. Whether a municipal corporation has the power to regulate or prohibit the sale of articles of merchandise on its streets and sidewalks depends upon the

legislative power delegated to it by the state legislature. 105 A.L.R. 1052; 163 A.L.R. 1335; *Commonwealth c. Rivkin*, (Mass.), 109 N.E. 2d 838; *N. J. Good Humor v. Board of Com'rs* (N.J.), 11 A. 2d 113.

In addition to the State license prescribed by G.S. 105-53, the authority to levy a license tax on peddling is conferred on cities by G.S. 105-53(g). However, G.S. 160-200, which sets forth express powers conferred on municipal corporations, contains no provision relating to the prohibition or regulation of the business or occupation of peddling .

The City of Raleigh under G.S. 160-200(11) had express authority to "adopt such ordinances for the regulation and use of the streets, squares, and parks, and other public property belonging to the city, as it may deem best for the public welfare of the citizens of the city"; and under G.S. 160-200(31) the City of Raleigh had express authority "(t)o provide for the regulation, diversion, and limitation of pedestrians and vehicular traffic upon public streets, highways, and sidewalks of the city and to regulate and limit vehicular parking on streets and highways in congested areas"; and under G.S. 160-200(6) the City of Raleigh had express authority "to define, prohibit, abate, or suppress all things detrimental to the health, morals, comfort, safety, convenience, and welfare of the people, and all nuisances and causes thereof."

The crucial question is this: Is the ordinance adopted February 26, 1962, within the powers conferred upon the City of Raleigh by the General Assembly?

The pertinence of decisions in other jurisdictions depends largely upon what statutory powers were delegated by the legislature to municipal corporations. In *City of Chicago v. Rhine* (Ill.), 2 N.E. 2d 905, 105 A.L.R. 1045, the court held valid an ordinance of the City of Chicago prohibiting the sale or offering for sale of *any article,* daily newspapers excepted, on any street, alley, or public place *in two defined and restricted areas where street traffic was congested.* The validity of the ordinance was challenged by a dealer in magazines. In Illinois, the Legislature had delegated to municipal corporations, *inter alia,* the authority (1) to regulate traffic and sales upon the streets, sidewalks, and public places, and (2) to license, tax, regulate, suppress, and prohibit hawkers and peddlers.

In Ohio, where statutes enacted by the General Assembly recognized peddling as a lawful business or occupation, ordinances similar to that now under consideration have been held invalid as unwarranted and arbitrary interference with such lawful business or occupation. *Frecker v. City of Zanesville,* 72 N.E. 2d 477; *Schul v. King,* 70 N.E. 2d 378;

*Frost Bar v. City of Shaker Heights,* 141 N.E. 2d 245; *contra, X-C'el Dairy, Inc. v. City of Akron,* 25 N.E. 2d 700. In *Frecker v. City of Dayton,* 90 N.E. 2d 851, the Supreme Court of Ohio, in a four to three decision held invalid an ordinance prohibiting the sale on streets of ice cream products, soft drinks, candy, sandwiches, peanuts, popcorn, and similar products.

In *Trio Distributor Corp. v. City of Albany,* 143 N.E. 2d 329, the Court of Appeals of New York, in a four to three decision, held invalid an ordinance providing: "§ 2. When any person shall vend or peddle from a vehicle in the public streets and places in the City of Albany, and, in the pursuit of such business or activity, children shall collect, assemble or gather about such vehicle for the purpose of making purchases, such person so vending and peddling, and the pursuit of such occupation, shall be accompanied by an attendant whose sole duty and occupation shall be to protect and safeguard the children from injury and the hazards of street vehicle traffic and he shall maintain a constant look-out for approaching vehicles and shall warn the children and guard them from injury." The ordinance was held unconstitutional as an attempt to prohibit a legitimate business under the guise of regulation. The opinion cites a prior decision of said court, to wit, *Good Humor Corporation v. City of New York,* 49 N.E. 2d 153, where the ordinance under consideration was held invalid, in which Lehman, Chief Judge, said: "The fundamental question remains whether prohibition rather than regulation in this case is reasonable."

The decision of the Court of Appeals in *Trio Distributor Corp. v. City of Albany, supra,* reversed *Trio Distributor Corporation v. City of Albany,* 156 N.Y.S. 2d 906, where the ordinance had been upheld as *a reasonable regulation.* But, while upholding the ordinance as a reasonable regulation, this statement, supported by numerous citations, appears in the opinion of Taylor, J.: "It is settled that a municipality may not *entirely prohibit* the business of vending ice cream or ice cream products on its public streets." (Our italics)

In *N. J. Good Humor v. Board of Com'rs, supra,* the Court of Errors and Appeals of New Jersey held invalid an ordinance prohibiting peddling within the boundaries of the municipality. New Jersey statutes conferred upon municipalities the power, *inter alia,* to "make, amend, repeal and enforce ordinances to license and regulate . . . hawkers, peddlers, . . . itinerant vendors of merchandise." The court, in opinion by Heher, J., said: "The power to 'regulate' is ordinarily confined to such reasonable restraints upon the trade or business made the subject thereof as may be demanded by the public interest. It will

not usually be construed as including the absolute prohibition of a legitimate business that may be pursued as of common right." In accord: *Germano v. Keenan* (N.J.), 95 A. 2d 439. In *Harrington Park v. Hogenbirk* (N.J.), 145 A. 2d 161, a municipal ordinance was upheld as a reasonable regulation (not a prohibition) of peddling. The ordinance provided: "No person shall park a vehicle upon a public roadway or street for the purpose of or during the process of soliciting sales or business, displaying goods for sale or selling, or offering to sell, for delivery of goods or merchandise to buyers, consumers or other persons who are occupants of vehicles, standing or moving on the public streets or highways."

Notwithstanding the discussion and findings recited in the preamble, violation of the operative provisions of the Raleigh Ordinance does not depend upon whether the mobile ice cream unit rings bells or chimes or plays music when it approaches or when it is parked or whether it parks upon a street or streets in an area of congested traffic. The conduct proscribed by Section 1 of the Ordinance is the sale or offering for sale at any time to any person of any age of any ice cream product from any mobile unit on any street or alley of Raleigh under any circumstances.

Nothing appears to indicate the ordinance was adopted on account of injury to children or other condition resulting from the sale or offering for sale of ice cream products or other merchandise on the streets of Raleigh from mobile units. In the discussion at the public hearing preceding the adoption of the ordinance, both the proponents and the opponents based their contentions on what had occurred in other localities. The preamble indicates the city council considered the sale and offering for sale of ice cream products upon the streets of Raleigh from mobile units would or might increase the hazards to which children and other pedestrians are exposed when crossing or otherwise using the public streets. It seems quite possible this laudable objective of the city council might be achieved wholly or substantially by a regulatory ordinance.

We reach these conclusions: Under a license issued in accordance with general State law, the sale and offering for sale of ice cream products on public streets in the area covered by such license is a lawful business or occupation. No express power has been conferred by the General Assembly on municipal corporations to prohibit or to regulate the business or occupation of peddling otherwise than by imposing license taxes thereon. In the exercise of express powers conferred upon municipal corporations by the General Assembly, including those referred to above, a municipal corporation has the implied power to

adopt an ordinance providing for the reasonable regulation, but not for the prohibition, of the sale and offering for sale of merchandise upon its streets from mobile units.

We express no opinion as to whether a regulatory ordinance, otherwise reasonable in all respects, would be invalid if it applied only to the sale or offering for sale of *ice cream products* from mobile units.

Having reached the conclusion the challenged prohibitory ordinance exceeded the power conferred upon the City of Raleigh by the General Assembly and therefore is invalid, the judgment allowing defendant's motion to quash the warrant charging a violation of Section 1 thereof is affirmed.

Affirmed.