GARY P. SMITH, D/B/A HOLIDAY HEALTH CLUB, ROBERT THOMPSON
AND PEGGY N. THOMPSON, D/B/A PEGGY'S HEALTH CLUB, JAMES
B. EDGE, D/B/A ROMAN HEALTH CLUB, STEPHEN B. SCOTT, D/B/A
TOUCH OF MAGIC, ON BEHALF OF THEMSELVES AND SUCH OTHER PERSONS,
FIRMS AND CORPORATIONS AS ARE SIMILARLY AFFECTED BY SECTION 17-14.1
AND SECTION 17-12 OF THE CITY CODE OF THE CITY OF FAYETTEVILLE,
NORTH CAROLINA, CONCERNING THE LICENSING OF MASSEURS AND MAS-
SEUSES AND MASSAGE PARLORS AND HEALTH CLUBS IN THE CITY OF
FAYETTEVILLE v. HERVEY KEATOR, ACTING CHIEF OF POLICE OF THE
CITY OF FAYETTEVILLE, NORTH CAROLINA, OTTIS F. JONES, SHERIFF
OF CUMBERLAND COUNTY, NORTH CAROLINA, AND JACK THOMPSON,
DISTRICT ATTORNEY (DISTRICT SOLICITOR) OF THE TWELFTH JUDICIAL
DISTRICT OF THE STATE OF NORTH CAROLINA

No. 7412SC147

(Filed 20 March 1974)

1. **Municipal Corporations § 8— city ordinance — conflict with State law**
      A city has no power to adopt an ordinance which is in conflict
   with State law.

2. **Municipal Corporations § 32; Physicians, Surgeons, Etc. § 1— art of
   healing — masseurs — privilege licenses — local regulation**
      Masseurs are not persons "practicing any professional art of
   healing" within the meaning of G.S. 105-41(a); therefore, masseurs
   are not required to obtain a privilege license from the State, G.S.
   105-41(h) does not give them the right to operate throughout the
   State, and they are subject to regulation by local governments.

3. **Constitutional Law §§ 12, 14; Municipal Corporations § 32— massage
   parlor ordinance — constitutionality**
      The Fayetteville massage parlor ordinance is construed to allow
   a licensee to appear before the city council and present his case before
   his license can be revoked and to permit the city council to deny an
   application for a massage license only upon reasonable grounds and
   after notice and hearing; when so construed, the ordinance meets the
   requirements of due process.

4. **Constitutional Law §§ 12, 20; Municipal Corporations § 32— prohibit-
   ing massage by member of opposite sex — equal protection**
      Provision of a massage parlor ordinance making it unlawful for
   any person licensed under the ordinance "to treat a person of the
   opposite sex, except upon the signed order of a licensed physician,
   osteopath, chiropractor, or registered physical therapist" does not dis-
   criminate against women in violation of the equal protection clause
   of the Fourteenth Amendment.

5. **Municipal Corporations § 32— massage parlor ordinance — invalidity
   of one provision — validity of remaining provisions**
      Even if a provision of a city ordinance forbidding massagists to
   treat persons of the opposite sex should be held unconstitutional, the
   remaining provisions of the ordinance regulating massage parlors
   would remain in effect.

Smith v. Keator

**6. Constitutional Law §§ 12, 14; Municipal Corporations § 32— validity of massage parlor ordinance**

It is proper for a city to license massage parlors and to deny licenses to those applicants who cannot provide proof of good moral character, who are unable to furnish the required health certificate, or who otherwise fail to meet any reasonable qualifications.

APPEAL by defendants from *Braswell, Judge,* 9 August 1973 Session of Superior Court held in CUMBERLAND County.

Plaintiffs brought this action to enjoin the defendants in their official capacities as law enforcement officers from enforcing the provisions of Section 17-14.1 and Section 17-12 of the Code of Ordinances of the City of Fayetteville which are applicable to masseurs, massage parlors, health salons and clubs. Plaintiffs operate massage parlors in Fayetteville and have paid a state privilege license tax as a masseur or masseuse under G.S. 105-41 but have not obtained licenses under the Fayetteville ordinance.

Section 17-14.1 is a detailed ordinance which provides that every masseur or masseuse must obtain a license from the city council. Persons applying for a license must furnish proof of moral character and a "health certificate" from a doctor. Subsection (e) of the ordinance provides that when an application "is submitted in proper form and is approved by the city council, then the city tax collector is authorized to issue a business license to such applicant." Licensees must file the names and addresses of their employees with the chief of police, and they must keep records of the names and addresses of their customers. The ordinance regulates the hours of operation of massage parlors and forbids minors to patronize any massage parlor except under the orders of a doctor.

Subsection (j) of the ordinance reads as follows:

*"Revocation of License.* Whenever, in the opinion of the chief of police of the city, there is good cause to revoke a license acquired hereunder, he shall submit a written recommendation of revocation, stating the reasons therefor, to the mayor and the city council, and by registered mail shall forward to the licensee a copy of his recommendation. The city council shall thereupon be authorized to revoke such license if in its sound discretion it is deemed in the best interests of the health, safety, welfare or morals of the people of the city."

Subsection (1) provides in part:

> *"Treatment of Persons of Opposite Sex Restricted.* It
> shall be unlawful for any person holding a license under
> this section to treat a person of the opposite sex, except
> upon the signed order of a licensed physician, osteopath,
> chiropractor, or registered physical therapist, which order
> shall be dated and shall specifically state the number of
> treatments, not to exceed ten (10)."

Section 17-12 of the Fayetteville code provides that when
a business is subject to a licensing ordinance, no person may
engage in that business without obtaining a license.

The superior court entered judgment:

> " . . . IT IS ORDERED, ADJUDGED AND DECREED that Sec-
> tion 17-14.1, and that limited part of Section 17-12 dealing
> with massage parlors, of the Code of Ordinances of the City
> of Fayetteville is invalid and void. It is in conflict with G.S.
> 105-41, which has preempted the subject. It is also declared
> unconstitutional.

> "The danger of prosecution of the plaintiffs is real and
> imminent. The plaintiffs would suffer irreparable damage
> if the ordinance were enforced. Pending the trial of this
> cause, a preliminary injunction is now granted the plaintiffs.
> The defendants are hereby restrained and prohibited from
> enforcing or attempting to enforce Section 17-14.1 and
> Section 17-12 of the Code of Ordinances of the City of
> Fayetteville."

Defendants appealed.

*Butler, High & Baer, by Sneed High, for plaintiff appellees.*

*Nance, Collier, Singleton, Kirkman and Herndon, by Ru-
dolph G. Singleton, Jr., and Clark, Clark, Shaw & Clark, by
Heman R. Clark, for defendant appellants.*

BALEY, Judge.

The superior court held that the Fayetteville massage par-
lor ordinance was invalid on two grounds: first, because it was
in conflict with state law; and second, because it violated the
due process and equal protection clauses of the United States
Constitution.

Smith v. Keator

[1]   A city has no power to adopt an ordinance which is in conflict with state law. An ordinance is inconsistent with state law when it "makes unlawful an act, omission or condition which is expressly made lawful by State . . . law." G.S. 160A-174(b) (2) ; *see Tastee-Freez, Inc. v. Raleigh,* 256 N.C. 208, 123 S.E. 2d 632. Plaintiffs contend that the operation of massage parlors is expressly made lawful by G.S. 105-41(a) and (h), and therefore cannot be restricted by a city ordinance.

G.S. 105-41(a) provides as follows:

"[A]ny person practicing any professional art of healing for a fee or reward . . . shall apply for and obtain from the Commissioner of Revenue a statewide license for the privilege of engaging in such business or profession . . . . "
G.S. 105-41(h) provides:

"[T]he statewide license herein provided for shall privilege the licensee to engage in such business or profession in every county, city or town in this State."

In determining whether plaintiffs' contention is a valid one, it is necessary to consider whether or not massagists are within the scope of G.S. 105-41(a). If massagists are not required to obtain a privilege license under G.S. 105-41(a), then G.S. 105-41(h) does not give them the right to operate throughout the state, and the city of Fayetteville is free to regulate them.

[2]   We are of the opinion that masseurs are not persons "practicing any professional art of healing . . . " within the meaning of G.S. 105-41(a). The term is used in the statute in conjunction with physician, veterinary, surgeon, dentist, and others which require long periods of specialized education and training and a degree of specialized knowledge of an intellectual as well as physical nature. It seems clear that the legislature intended to use the word "professional" as implying a specialized knowledge and skill beyond manual dexterity. In this sense a "professional" art is one requiring "knowledge of advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study." *Paterson v. University of the State of New York,* 14 N.Y. 2d 432, 437, 201 N.E. 2d 27, 30, 252 N.Y.S. 2d 452, 455 (1964) ; *see Reich v. Reading,* 3 Pa. Cmwlth. 511, 518, 284 A. 2d 315, 319 (1971). "A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge,

labor, or skill, and the labor of skill involved is predominantly mental or intellectual, rather than physical or manual." *Marx v. Hartford Accident & Indem. Co.*, 183 Neb. 12, 14, 157 N.W. 2d 870, 872 (1968). Administering a massage requires manual skill and dexterity, but it does not require mental or intellectual skill, advanced knowledge, or specialized instruction and study. An uneducated person can give a massage as well as an educated person.

In addition, massage is not an "art of healing." The word "healing" is ordinarily understood to mean the curing of diseases or injuries. A person may receive a massage for relaxation, to relieve sore muscles, or for other purposes, but ordinarily massage is not used as a means of curing diseases. Certainly there is no evidence in the record that plaintiffs claim the ability to cure diseases.

It is true that the Commissioner of Revenue has interpreted G.S. 105-41(a) as applying to massagists. His interpretation of the statute, however, cannot be binding on the courts. It is entirely proper for the Commissioner to issue rulings setting forth his interpretation of the revenue statutes, in order to co-ordinate Revenue Department policy and make it uniform; but the power to construe statutes authoritatively belongs to the courts and not to any administrative official. *Estate of Sanford v. Commissioner*, 308 U.S. 39 (1939); *Pipeline Co. v. Clayton, Comr. of Revenue*, 275 N.C. 215, 166 S.E. 2d 671.

Since massage is not a professional art of healing, it is not within the scope of G.S. 105-41. Massagists are not required to obtain a privilege license from the state, and they are subject to regulation by local governments. The Fayetteville massage parlor ordinance does not conflict with state law.

[3] Plaintiffs next assert that the massage parlor ordinance violates the due process clause of the Fourteenth Amendment by permitting the city council to act arbitrarily in denying or revoking massage licenses. They argue that subsections (e) and (j) give the council unlimited discretion to deny any application for a license or revoke any license already issued. Under the due process clause, a city may not deny or revoke an occupational license arbitrarily, or without notice and a hearing. *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 102-03 (1963); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39 (1957); *Goldsmith v. United States Board of Tax Appeals*, 270

U.S. 117, 123 (1926) ; 1 Davis, Administrative Law, §§ 7.18-.19 (1958, Supp. 1970) ; 9 McQuillin, Municipal Corporations § 26.75. But the wording of the massage parlor ordinance is not incompatible with this principle. The ordinance can be construed so as to avoid constitutional deficiencies. *See Education Assistance Authority v. Bank,* 276 N.C. 576, 174 S.E. 2d 551; *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548. Subsection (j) should be construed to allow a licensee to appear before the city council and present his case before his license can be revoked. The subsection expressly provides that a licensee must be notified by registered mail whenever there is a proposal to revoke his license, and this notice procedure would be of no use if the licensee were not allowed to come before the council for a hearing. Subsection (e), likewise, should be interpreted in a manner that will satisfy the requirements of the due process clause; the city council should not be permitted to deny an application for a massage license except upon reasonable grounds, and after notice and a hearing. When interpreted in this way, the licensing provisions of the ordinance are entirely constitutional.

[4]   Finally plaintiffs contend that subsection (l) of the massage parlor ordinance discriminates against women in violation of the equal protection clause of the Fourteenth Amendment. *In Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18, the North Carolina Supreme Court upheld a similar city ordinance forbidding massagists to treat persons of the opposite sex. It quoted with approval from *In re Maki,* 56 Cal. App. 2d 635, 639, 644, 133 P. 2d 64, 67, 69 (1943) :

> "The ordinance applies alike to both men and women. . . . The barrier erected by the ordinance against immoral acts likely to result from too intimate familiarity of the sexes is no more than a reasonable regulation imposed by the city council in the fair exercise of police powers.
>
> *   *   *
>
> "There is nothing in the ordinance that denies the equal protection guaranteed by the Fourteenth Amendment. It applies to all alike who give massages for hire and who are not licensed to practice one of the arts of healing."

Ordinarily, a statute will not be held to violate the equal protection clause unless it lacks any rational basis. *Dandridge v. Williams,* 397 U.S. 471 (1970) ; *Williamson v. Lee Optical, Inc.,* 348 U.S. 483 (1955) ; *Goesaert v. Cleary,* 335 U.S. 464 (1948) ;

---

---

*Developments in the Law—Equal Protection,* 82 Harv. L. Rev.
1065, 1077-87. But when a statute classifies persons on the
basis of a suspect criterion, it will not be judged by this lenient
standard; instead, the courts will subject it to strict scutiny.
*Frontiero v. Richardson,* 411 U.S. 677, 682-88 (1973), (opinion
of Brennan, J.) ; *Loving v. Virginia,* 388 U.S. 1, 11 (1967) ;
*Bolling v. Sharpe,* 347 U.S. 497, 499 (1954) ; *Developments in
the Law, supra* at 1087-1120, 1124-27. Among the suspect cri-
teria are race, alienage and national origin. *Frontiero v. Richard-
son, supra* at 682 (opinion of Brennan, J.) ; *Developments in the
Law, supra* at 1124. A classification which infringes upon a con-
stitutional right will also be viewed with strict scrutiny. *Dunn
v. Blumstein,* 405 U.S. 330, 337-42 (1972) ; *Shapiro v. Thompson,*
394 U.S. 618, 634 (1969) ; *Developments in the Law, supra* at
1120-23, 1127-31. When a statute is subjected to strict scrutiny,
it will be held constitutional only if it is shown to be *"necessary*
to promote a *compelling* governmental interest." *Dunn v. Blum-
stein, supra* at 342; *Shapiro v. Thompson, supra* at 634. Such
a statute will not be upheld merely because it serves the purpose
of administrative convenience. *Frontiero v. Richardson, supra*
at 688-90 (opinion of Brennan, J.) ; *Stanley v. Illinois,* 405 U.S.
645, 656 (1972) ; *Shapiro v. Thompson, supra* at 631.

For many years the United States Supreme Court has held
that sex was not a suspect criterion. Statutes applying differ-
ently to the different sexes were held constitutional if they had
a rational basis. *Hoyt v. Florida,* 368 U.S. 57 (1961) ; *Goesaert v.
Cleary, supra; West Coast Hotel Co. v. Parrish,* 300 U.S. 379,
400 (1937) ; Brown, Emerson, Falk & Freedman, *The Equal
Rights Amendment: A Constitutional Basis for Equal Rights for
Women,* 80 Yale L. J. 871, 875-82. Two recent decisions, how-
ever, *Reed v. Reed,* 404 U.S. 71 (1971), and *Frontiero v. Rich-
ardson, supra* (1973), have cast some doubt on the court's view
of the rational basis standard. In *Reed v. Reed, supra,* the Court
struck down an Idaho statute which provided that when two per-
sons of opposite sex were equally qualified to serve as adminis-
trator of a decedent's estate, the man must always be chosen.
In *Frontiero v. Richardson, supra,* a federal statute provided
that a serviceman could claim his wife as a dependent (for pur-
poses of obtaining increased medical and dental benefits and
quarters allowance) regardless of whether she was in fact
financially dependent on him, whereas a woman could not claim
her husband unless he was actually dependent upon her. The
Court held that this statute violated the equal protection clause.

Smith v. Keator

In neither of these cases did the court explicitly state that sex was a suspect criterion. While these cases give a more liberal construction to the equal protection clause of the Fourteenth Amendment in its application to sex, we do not interpret them as directly applicable to an ordinance regulating massage parlors. Absent a direct holding of the United States Supreme Court which would have the effect of overruling the *Cheek* case, it continues to be the law of this state and is here controlling.

[5, 6] Even if subsection (1) should be held unconstitutional because it discriminates against women, this would not mean that the entire ordinance is void. "The unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of its remaining provisions. Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Champlin Ref. Co. v. Corporation Comm'n*, 286 U.S. 210, 234 (1932) ; *accord, State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19; *Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E. 2d 78. Subsection (1) is only one part of a detailed regulatory scheme, and its absence would not impair the effectiveness of the other provisions of the ordinance. It should be emphasized that the equal protection clause does not deprive a city of the power to regulate massage parlors. It is entirely proper for the city of Fayetteville to license massage parlors and to deny licenses to those applicants who cannot provide proof of good moral character, who are unable to furnish the required health certificate, or who otherwise fail to meet any reasonable qualifications.

We hold Section 17-14.1 and Section 17-12 of the Fayetteville Code of Ordinances to be constitutional and valid.

The judgment of the Superior Court is

Reversed.

Judges CAMPBELL and HEDRICK concur.