**COLORADO SPRING AMUSEMENTS, LTD., t/a Velvet Touch, et al.**

v.

**Mayor Frank RIZZO et al.**

**Max RUBENSTEIN, t/a Philadelphia Health Club, et al.**

v.

**Mayor Frank L. RIZZO of the City of Philadelphia and Emmett F. Fitzpatrick, District Attorney of the City, et al.**

Civ. A. Nos. 74–955, 74–2174.

United States District Court,
E. D. Pennsylvania.

Dec. 5, 1974.

William J. Cottrell, Philadelphia, Pa., for plaintiffs.

Murray C. Goldman, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

An ordinance of the City of Philadelphia providing for the licensing and regulating of massage parlors, whereby employees of massage parlors are completely prohibited from massaging persons of the opposite sex has been challenged as being unconstitutional in Civil Action 74–955 (Velvet Touch) and Civil Action 74–2174 (Rubenstein). The challenged portion of the ordinance provides:—(Ordinance 9–610(4))

> *Prohibited Conduct.* No person employed or engaged in the business of masseur or masseuse shall treat a person of the opposite sex.

The quoted portion of the ordinance, on its face, violates both the "due process" and "equal protection" clauses of Section 1, Amendment 14 of the United States Constitution, irrespective of whether the proper standard to be applied is a "compelling governmental interest" or a "rational basis." Declaratory and injunctive relief will be granted in both actions.

On April 11, 1974 in Civil Action 74–955, plaintiffs, Colorado Springs, Ltd., t/a Velvet Touch and Laurel Benzer, et al., employees of the Velvet Touch, filed a "Complaint for Injunctive Relief, Declaratory Judgment and Money Damages" against the Mayor, Police Commissioner, Police Officers, Department of Health and Department of Licenses and Inspections of the City of Philadelphia. The complaint charges that Philadelphia Ordinance Bill No. 2524 (Nov. 1, 1963), Philadelphia Code 9–610(4), is unconstitutional on its face and as applied to plaintiffs.[1] On April 16, 1974, a hearing was held on a motion for a temporary restraining order and preliminary injunction. At that time an understanding between counsel was reached; *viz.*, the request for preliminary injunctive relief would not be pressed in exchange for the non-enforcement of 9–610(4), pending a determination of the constitutionality of the ordinance by this court. Plaintiffs' complaint was amended on April 23, 1974. A "Supplemental Complaint" was filed June 20, 1974 which charged defendants with enforcement of 9–610(4) against

---

1. Because a municipal ordinance is challenged, a district judge may decide the constitutional question without convening a three-judge court under 28 U.S.C. § 2281. Moody v. Flowers, 387 U.S. 97, 87 S.Ct.

1544, 18 L.Ed.2d 643 (1967); Philadelphia Newspapers, Inc. v. Borough Council of Swarthmore, 381 F.Supp. 228 (E.D.Pa. 1974).

the plaintiffs in violation of the agreement. Plaintiffs sought to depose certain defendant police officers on July 10, 1974. Defendants through their counsel refused on the grounds that a criminal prosecution was pending against certain of the plaintiffs. Plaintiffs filed a motion for sanctions for failure to appear at a deposition. A conference was held on July 11, 1974 to resolve the disputes over continued enforcement of 9–610(4), scheduling of depositions, discovery and sanctions. At that conference all counsel agreed that the original stipulation of April 16, 1974 would remain effective and that 9–610(4) would not be enforced against the Velvet Touch, pending determination of the validity of the ordinance, and that a decision on motions for discovery and sanctions would be postponed until after the constitutionality of 9–610(4) had been determined by the district court. Defendant through its counsel, Murray C. Goldman, Esquire, conceded that the standard to be used in assessing the constitutionality of 9–610(4) was "compelling state interest." Briefs were filed concerning the facial validity of 9–610(4).[2] The essential facts are not in dispute.

On August 21, 1974 in Civil Action 74–2174, a "Complaint for Declaratory Judgment, Injunctive Relief, and Money Damages" was filed by Max Rubenstein, t/a Philadelphia Health Club (Club) and Nicole Jones, et al., employees of the Club, against the Mayor, District Attorney, Commissioner of Police, Licenses and Inspections, and Health Departments of the City of Philadelphia as well as various police officers. The substance of this complaint is the same as in Velvet Touch with additional allegations in *Rubenstein* that plaintiffs come within the express exception to 9–610(4) because Max Rubenstein is a licensed physical therapist. (Section 9–610(5) (a) of the Ordinance.)[3] The cases were consolidated as related under Local Rule 3(c)(3). A hearing on a motion for a temporary restraining order in *Rubenstein* was held on August 22, 1974 at which time that motion was denied.

## FINDINGS OF FACTS

1. Bill Number 2524 was approved by the Mayor of the City of Philadelphia on October 1, 1963 and became effective on November 1, 1963 under Section 9–610 of the Philadelphia Code.

2. Colorado Springs Amusements, Ltd., operates a massage parlor, trading as Velvet Touch at 11 North Thirteenth Street, Philadelphia, Pennsylvania.

3. Plaintiffs Bezner, Bell Stevens, Rowland, Savage, Cooley, Hampton, Adams, Stone, Viola, Davis, Barnes and Dollar were employees of the Velvet Touch during March and April, 1974.

4. Max Rubenstein is a licensed physical therapist with a place of business known as the Philadelphia Health Club located at 101 N. 15th Street, Philadelphia, Pennsylvania.

5. Plaintiffs Spence, Rementer, Jones and Nichols were employees of the Philadelphia Health Club in April 1974.

6. Defendant Rizzo is Mayor of the City of Philadelphia.

7. Defendant Fitzpatrick is District Attorney of the City of Philadelphia.

2. The procedural posture of this case is not entirely clear. In *Velvet Touch* the plaintiffs' brief is in support of a motion for summary judgment while the defendants' brief is for declaratory judgment. The constitutional issue could be determined in either manner. There has been no brief filed on behalf of either side in *Rubenstein*. Because the cases are consolidated as related, counsel for plaintiffs and defendants are the same in both cases, and the determination of the issue can be made from the material be-fore the court with the same effect in both cases, it is neither necessary to have the parties retitle their pleadings nor submit additional pleadings to include *Rubenstein*. See Fed.R.Civ.P. 1.

3. § 9–610(5) *Exemptions*. The provisions of this ordinance shall not apply to massage treatment given

    (a) in the office of a licensed physician, osteopath, chiropractor or physical therapist;

8. Defendant O'Neill is Police Commissioner of the City of Philadelphia.

9. Defendant Sabatini is Commissioner of the Department of Licenses and Inspections of the City of Philadelphia.

10. Defendant Weinberg was Solicitor of the City of Philadelphia during the first nine months of 1974.

11. Defendant Polk is Health Commissioner of the City of Philadelphia.

12. Defendants Roselli, Brenton, Powell, DeVecchio, DeLoach, Feldman, Lyons, English and Ford are members of the Philadelphia Police Department.

13. On March 15, 1974 plaintiffs Savage, Cooley, Hampton and Adams were arrested by defendants DeVecchio and DeLoach for violating 9–610(4).

14. Charges stemming from the March 15, 1974 arrest against Savage, Cooley, Hampton and Adams were discharged.

15. On March 25, 1974 defendant Shaw entered the Velvet Touch and arrested plaintiff Viola for violating 9–610(4).

16. Plaintiff Viola was subsequently found guilty of violating 9–610(4).

17. On April 8, 1974 defendant Lyons entered the Velvet Touch and arrested plaintiff Stone for violating 9–610(4).

18. On April 8, 1974 defendant English entered the Velvet Touch and arrested plaintiff Davis for violating 9–610(4).

19. On April 8, 1974, Philadelphia Police Officers entered the Velvet Touch and arrested an employee, Barbara Smith, a/k/a Marth Smith for violating 9–610(4).

20. Stone, Davis and Smith were subsequently found guilty of violating 9–610(4).

21. On April 9, 1974 defendant Ford entered the Velvet Touch and arrested plaintiff Viola for violating 9–610(4).

22. Plaintiff Viola was subsequently found guilty.

23. On April 14, 1974, plaintiffs Spence and Rubenstein were arrested at the Philadelphia Health Club by a Philadelphia Police Officer for violating 9–610(4).

24. Charges against Spence and Rubenstein were subsequently dismissed.

25. On or about May 16, 1974 defendant Ford entered the Philadelphia Health Club and arrested plaintiffs Rementer, Jones and Nichols for violating 9–610(4).

26. Plaintiffs Rementer and Nichols were arrested for indecent assault, Pa. Stat.Ann. tit. 18, § 3126 (1973), by defendant Ford at the Philadelphia Health Club in connection with massages administered by them to male customers of the Philadelphia Health Club.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter.

2. Plaintiffs have standing to sue.

3. Philadelphia Code 9–610(4) violates Section 1, Article 14 of the United States Constitution.

4. Plaintiffs are entitled to injunctive and declaratory relief.

## DISCUSSION

█ Plaintiffs assert that the ordinance is unconstitutional because it conflicts with Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–2(a), and the Fourteenth Amendment of the United States Constitution both as to "due process" and "equal protection of the laws." A long settled doctrine dictates that federal courts "ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944), accord, Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); Hurd v. Hodge, 334 U.S. 24, 30 fn. 6, 68 S.Ct. 847, 92 L.Ed. 1187 (1948). In this case the only issue before the court involves contentions that the ordinance, on

694

its face, is unconstitutional. The facts are not in dispute. An adjudication as to the constitutionality of the ordinance is thus unavoidable to a determination of this litigation.

## CIVIL RIGHTS ACT—TITLE VII EQUAL EMPLOYMENT OPPORTUNITIES (42 U.S.C. § 2000e)

■ Plaintiffs assert that Section 9–610(4) conflicts with Section 703, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a).[4] The contention is that sexually discriminatory employment practices will inevitably result from compliance with the ordinance in direct conflict with § 2000e–2. Plaintiffs contend that the "supremacy clause" of Article 6 of the United States Constitution thereby invalidates the ordinance, rendering it unconstitutional.[4a] One recent federal district court case has unequivocably so held. Cianciolo v. Members of City Council, Knoxville, Tenn., 376 F.Supp. 719, 723 (E.D.Tenn.1974).[5] See also Joseph v. House, 353 F.Supp. 367 (E.D.Va.), aff'd sub nom. Joseph v. Blair, 482 F.2d 575 (4th Cir. 1973), where enforcement of a similar ordinance was preliminarily enjoined.

On the present record, no determination can be made as to whether the ordinance conflicts with Title VII of the Civil Rights Act of 1964. Title VII appears to have been enacted under the power granted Congress by Article I,

Section 8 of the United States Constitution to regulate interstate commerce. In any event, Title VII expressly defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b). Because plaintiffs have neither alleged nor presented any proof or facts to establish that the plaintiffs, or any of them, were in anyway engaged in interstate commerce, or that either massage parlor ever employed as many as fifteen persons,[6] I am unable to reach this claim.

## FOURTEENTH AMENDMENT
"Equal Protection of the Laws"

Ordinances similar to the one in question, which prohibit persons engaged as massagers from administering massages to persons of the opposite sex have been tested in repeated litigation. The decisions are not unanimous in their result or reasoning. As a broad generality, it may be observed that earlier state court decisions tended to uphold the constitutionality of such ordinances as being properly within the state's police power. The seminal case appears to be Ex Parte Maki, 56 Cal.App.2d 635, 133 P.2d 64 (1943). The rationale of Maki was premised upon the reasonable relationship between the ordinance in question and the legitimate police power of regulating illicit sexual activity.

The ordinance applies alike to both men and women. If petitioner should

---

4. 2000e–2. Unlawful employment practices —Employer practices
　a) It shall be an unlawful employment practice for an employer—
　　(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
　　(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

4a. While the attack based upon Title VII of the Civil Rights Act is seemingly statutory, in fact a constitutional analysis under the Supremacy clause, Article VI is mandated.

5. Cianciolo, involving a Knoxville ordinance with provisions similar to the challenged provisions in the present cases, also squarely ruled the ordinance unconstitutional under the "equal protection clause" of the Fourteenth Amendment.

6. The recent decision of the Superior Court of the District of Columbia in Geisha House, Inc. v. Wilson, C.A. 6044–74, decided September 25, 1974, see 42 L.W. 2157, noted, under similar contentions, that Title VII of the Civil Rights Act of 1964 would be inapplicable because Geisha House, Inc. did not employ as many as fifteen persons.

receive only male patrons and do his own work or employ only masseurs, he would not violate the ordinance. If he should receive only female patrons and employ only masseuses to do his work, there would be no violation. The barrier erected by the ordinances against immoral acts likely to result from too intimate familiarity of the sexes is no more than a reasonable regulation imposed by the city council in the fair exercise of police powers.

133 P.2d at 67. Various state courts followed the rationale of *Maki* in upholding similar ordinances.[7] Smith v. Keator,[8] 21 N.C.App. 102, 203 S.E.2d 411 (1968); Rubenstein v. Township of Cherry Hill, Unreported Affirmance, N. J.Super.Ct. Appellate Div., January 29, 1974, appeal dismissed for want of substantial federal question, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974); Kisley v. City of Falls Church,[9] 212 Va. 693, 187 S.E.2d 168, appeal dismissed for want of a substantial federal question, 409 U.S. 907, 93 S.Ct. 237, 34 L. Ed.2d 169 (1972); Patterson v. City of Dallas,[10] 355 S.W.2d 838 (Tex.Civ.App. 1962). See the cases cited in 51 A.L.R. 3d 936 (1973) and 17 A.L.R.2d 1183 (1951).

My research has disclosed only two cases currently effective and neither overruled nor limited by later decisions which uphold ordinances similar to 9–610(4). Both are state court decisions —Smith v. Keator, *supra,* and Rubenstein v. Township of Cherry Hill, *supra.*

However a substantial line of cases, presently effective, have held such ordinances unconstitutional. J. S. K. Enterprises v. City of Lacey, 6 Wash.App. 43, 492 P.2d 600, 607 (1971) rehearing, 6 Wash.App. 433, 493 P.2d 1015 (1972); Geisha House, Inc. v. Wilson, *supra*; Cianciolo v. City of Knoxville, *supra*; Valley Health Systems, Inc. v. City of Racine, 369 F.Supp. 97 (E.D.Wis.1973); Corey v. City of Dallas, 352 F.Supp. 977 (N.D.Tex.1972). Moreover, I have failed to discover any decision by a federal court which upholds the validity of such an ordinance.

■■ Plaintiffs contend that the ordinance not only creates a classification based on sex, but also deprives them of an opportunity to engage in a legitimate occupation and therefore, in the absence of a compelling governmental interest, the ordinance is constitutionally invalid. The equal protection clause does not prohibit a state or municipality from passing laws which treat classes of people differently, but only from treating classes differently when the basis of the discrimination does not bear a rational relationship to a legitimate statutory objective. Jefferson v. Hackney, 406 U. S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Eisenstadt v.. Baird, 405 U.S. 438, 446–447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Therefore, the classification may not invidiously discriminate between and among classes of persons.

7. Maki was overruled by the California Supreme Court in 1972 in the case of Lancaster v. Municipal Court for Beverly Hills, 6 Cal.3d 805, 100 Cal.Rptr. 609, 494 P.2d 681 (1972), on the basis that the state penal statute prohibiting illicit sexual behavior preempted the field. Thus the California Court did not reach the Federal Constitutional claim.

8. *Smith* relied on Cheek v. City of Charlotte, 273 N.C. 293, 160 S.E.2d 18 (1968), in which the North Carolina Supreme Court agreed with the *Maki* rationale but found the Charlotte ordinance unconstitutional because it exempted barber shops and Y.M.C. A.'s, an exemption the Court found arbitrary.

9. The identical ordinance was later preliminarily enjoined in Joseph v. House, *supra,* primarily on the ground of the supremacy of Title VII of the Civil Rights Act of 1964.

10. *Patterson* was followed in subsequent Texas decisions. City of Houston v. Shober, 362 S.W.2d 886 (Tex.Civ.App.1962); Connell v. State, 371 S.W.2d 45 (Tex.Cr.App. 1963); Gregg v. State, 376 S.W.2d 763 (Tex.Cr.App.1964). However, these cases were effectively overruled by Corey v. City of Dallas, 352 F.Supp. 977 (N.D.Tex.1972), which held that a similar ordinance was unconstitutional.

Schilb v. Kuebel, 404 U.S. 357, 364, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971). In Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the Supreme Court suggested three factors to be considered: (1) the character or basis of the discrimination, (2) the interests of the individuals subject to the discrimination, and (3) the governmental interest at stake. If the facts reveal that either the basis of the classification is suspect, i. e., invidious and/or the class of persons discriminated against is deprived of a fundamental right, then a compelling state interest and not a mere rational relationship between the legislation and a legitimate objective must be established to make the legislation constitutionally valid. Dunn v. Blumstein, supra at 335, 92 S.Ct. 995; Schilb v. Kuebel, supra, 404 U.S. at 365, 92 S.Ct. 479.

■ It is important, however, in attempting to classify cases into neat categories such as "rational basis" and "compelling interest", to be mindful that these categories are only heuristic devices. These tests have somewhat uncertain standards. In Reed v. Reed, supra, 404 U.S. at 76, 92 S.Ct. at 254, in which the rational basis test was used, the court stated that a classification based upon sex must be:

reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. [citation omitted].

In a compelling state interest analysis the burden shifts to the government to show an interest so compelling that it outweighs the fact that the suspect class is discriminated against or there is a deprivation of a fundamental right. Dunn v. Blumstein, supra, 405 U.S. at 335, 92 S.Ct. 995. Applying the three factors of Dunn v. Blumstein to the instant case, it is clear that the discrimination is based solely on sex. The individuals subject to the discrimination are all persons employed by massage parlors and their interest is in their right to freely engage in a lawful business without arbitrary restraints. The governmental interest appears to be to protect against illicit and immoral sexual behavior between massagers and customers of the opposite sex.

I do not interpret any decision of the United States Supreme Court or the Third Circuit Court of Appeals as squarely holding that a legislative classification based on sex is so inherently suspect and invidious as to mandate application of the "compelling interest" test. However, both Frontiero v. Richardson,[11] 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), and Reed v. Reed, supra, indicate that the courts will carefully scrutinize classifications based on sex. See also, Kohr v. Weinberger, 378 F.Supp. 1299 (E.D.Pa.1974) (3-Judge Court); Weisenfeld v. Secretary of HEW, 367 F.Supp. 981, 988 (D. N.J.1973) (3-Judge Court).

■ The right to engage in a lawful business or profession without arbitrary restraints is a "fundamental right" within the protection of the Fourteenth Amendment. New State Ice Co. v. Liebmann, 285 U.S. 262, 52 S.Ct. 371, 76 L. Ed. 747 (1932); Truax v. Raich, 239 U. S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915). In Cianciolo v. Members of City Council, Knoxville, Tenn., supra, 376 F.Supp. at 723, the court stated "[a]s the commercial enterprise of administering massages is, per se, a legitimate occupation, the city in this instance must show a compelling state interest before their ordinance can be upheld." Corey v. City of Dallas, supra, likewise held that the questioned ordinance infringed on the basic right to earn a livelihood and, therefore, had to be justified by a compelling governmental interest.

■ Municipalities had a legitimate interest in attempting to prohibit illicit

---

11. In Frontiero four of the justices (Brennan, Douglas, White and Marshall) reasoned that a sex-based classification was inherently suspect.

sexual behavior. No case, so far as I am aware, has ever suggested the contrary. The defendants in their brief argue that this is a compelling interest, and attach excerpts of testimony of police and public health officials [12] concerning activities in massage parlors. Although these statements are not properly part of the record as evidence, they may, for purposes of this decision, be assumed to be factually correct. Nevertheless, these facts still do not establish a compelling reason for totally prohibiting all persons during the course of employment from administering a massage to a person of the opposite sex.

Even under the "rational basis" test, the ordinance is constitutionally invalid. This test, requires as a minimum that there be a rational, logical, reasonable relationship between the prohibition and the object sought to be accomplished. The logic applied is that because some massagers have, may or will commit immoral or illicit sexual acts with customers of the opposite sex, all massagers must be prohibited from massaging customers of the opposite sex. To deny all the opportunity to engage in their chosen occupation with both sexes because some may use the practice as a subterfuge to perform illegal acts is unreasonable and arbitrary. Corey v. City of Dallas, *supra*. The logic behind 9–610(4) is analogous to the type of logic that condemns one as guilty by association. As J. S. K. Enterprises v. City of Lacey, *supra*, 492 P.2d at 607, observed, it is "stereotyping of the worst kind."

It is saying, in effect, that because some women [or men] perform lewd acts in sauna parlors that all massagists can be judged to be lewd if given the opportunity and therefore they cannot massage members of the opposite sex.

By analogy, it would be as rational to prohibit all business and professional associations between persons of the opposite sex where the business or profession requires private consultation such as lawyer-client, doctor-patient, nurse-patient, clergyman-parishioner, tutor-student. That the percentage or incidence of improper conduct on the part of one occupational classification may vary from another makes prohibition no less onerous to the honorable practitioner. By further analogy, it might as logically be contended that to prevent illicit and immoral sexual activities not only between persons of the opposite sex but also between persons of the same sex, massage parlors and the occupations of masseurs and masseuses employed in massage parlors be totally prohibited.

Cases have suggested less restrictive or less onerous methods of prohibiting and preventing the illicit and criminal conduct sought to be outlawed. I do not deem it appropriate for the court to advise City Council as to methods by which such proper objectives may be achieved, but some cases have suggested ways in which the questioned legislation could be corrected to meet constitutional requirements. See Corey v. City of Dallas, *supra*.

## "DUE PROCESS OF LAW"

Under a due process analysis, Ordinance 9–610(4) is similarly unconstitutional. The ordinance makes a conclusive presumption that all who massage persons of the opposite sex will engage in illicit sexual activity. For such a presumption to be constitutionally valid, the presumption must in fact be reasonable. Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). Even though there is a legitimate purpose for the legislation, such legislation must fail if there is no reasonable factual basis for the enactment. Cleveland Board of Education v. La Fleur, 414 U.S. 632, 645, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); United States Dept. of Agriculture v. Murry, 413 U.S. 508, 514, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230,

12. This testimony was given before the Philadelphia City Council on August 14, 1963 in conjunction with passage of 9–610(4).

37 L.Ed.2d 63 (1973); Stanley v. Illinois, 405 U.S. 645, 655, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). There is no evidence on the record from which a conclusion could be made that all persons who massage a person of the opposite sex will commit an illicit sexual act. The above cited cases dealt with matters in which a person in a particular class was conclusively presumed to lack qualities essential for either engaging in a profession, receiving a benefit or raising a child. The presumptions were struck down because there was no reasonable factual basis for them. Rather in each case, due process required that a hearing be held before the individual be deprived of the right in question.

In a more apposite situation factually, Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held unconstitutional legislation, 21 U.S.C. § 176a, which presumed that a person in possession of marijuana brought it into the country illegally, knew of the importation, and intended to defraud the United States. *Leary, supra* at 37, 89 S.Ct. 1532. *Leary* may be analogized to the instant case because in both instances criminal activity is presumed. In *Leary* the standard enunciated was that

> a criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

*Id.* at 36, 89 S.Ct. at 1548. Again there is no evidence on the record from which I can conclude that illicit sexual activity will inevitably result if a masseur or masseuse massages a person of the opposite sex. The instant case is even more compelling than *Leary*, since in that case only a rebuttable presumption arose, while here there appears to be a conclusive presumption.

The ordinance precludes everyone, whether moral or immoral, from administering for compensation massages to persons of the opposite sex. The ordinance provides no opportunity for anyone to conduct such business, even though if properly conducted, such would be a legitimate business enterprise. The ordinance makes this blanket prohibition because the legislative body ascertained to its satisfaction that some persons utilized such business for immoral and illicit sexual practices. In effect, therefore, to eradicate this evil, without affording any opportunity for one to establish that he or she would engage only in legal and legitimate massage practices, the legislative body conclusively presumed that all would engage in improper practices. This is prohibiting one from engaging in a legitimate business without due process of law.

■ The defendants, or some of them, acting through the Police Department of the City of Philadelphia have attempted to enforce the ordinance through prosecution as to its penal provisions. Even during the course of this litigation, there is evidence that certain of the police attempted a continued enforcement despite an agreement between counsel that none would be attempted until the present issue was decided. This may have been due to lack of communication or a misunderstanding. Nevertheless, it is apparent that vigorous enforcement may be attempted unless expressly prohibited by injunctive relief. Because the ordinance violates the United States Constitution, and enforcement would clearly cause irreparable harm to all plaintiffs, none of whom have an adequate remedy at law, injunctive relief is appropriate and will be granted. All outstanding motions for sanctions will be dismissed and denied.