O. H. LEAK, ROBERT GOODEN, W. T. AMAKER, LEWIS W. NELSON, BENJAMIN BROCKMAN, CHARLES RAMSEUR, ORIGINAL PLAINTIFFS AND LEAGUE OF PROFESSIONAL POLICE OF HIGH POINT, INC., INTERVENING PLAINTIFFS V. THE HIGH POINT CITY COUNCIL: PAUL W. CLAPP, MAYOR: FRANK H. WOOD, ROBERT O. WELLS, HENRY SHAVITZ, ARNOLD KOONCE, JR., O. A. KIRKMAN, MRS. RACHEL GRAY, ROY B. CULLER, JR., SAM BURFORD, INDIVIDUALLY AND AS MEMBERS OF THE HIGH POINT CITY COUNCIL, DEFENDANTS

No. 7418SC1094

(Filed 16 April 1975)

1. **Appeal and Error § 9— moot question — matter of public interest — no dismissal of appeal**

   The general rule that an appeal presenting a moot question will be dismissed is inapplicable where the question involved is a matter of public interest.

2. **Municipal Corporations § 6— investigative hearing by city council — live radio and television coverage**

   A city council conducting hearings investigating corruption in the police department pursuant to G.S. 160A-80 has authority to adopt rules providing not only for press coverage but also for live radio and television coverage. G.S. 160A-81.

APPEAL by defendants from *Rousseau, Judge.* Judgment entered 3 October 1974, Superior Court, GUILFORD County. Heard in the Court of Appeals 11 March 1975.

The original plaintiffs, individual members of the High Point Police Department, and intervening plaintiff, League of Professional Police of High Point, Inc., composed of 110 members of the Police Department, brought this action against the High Point City Council to enjoin the Council from holding scheduled hearings investigating corruption in the police department; or alternatively, that proper standards of due process be observed in the hearings.

A temporary restraining order prohibiting defendants from holding the hearings was issued on that day and the hearings were stopped. The order directed that the parties appear before Judge Rousseau on 30 September 1974, to determine if a preliminary injunction should issue.

At this hearing it appeared that the Council had found that there had been a public disclosure of a theft ring operating within the department; that morale was low, and that efficiency was low, and, therefore, the City Council constituted itself an investigative body, pursuant to G.S. 160A-80, "to determine the facts and the whole truth about the continuing problems within our police department." The mayor appointed three council members to the Police Investigating Committee, but the entire Council sat for the hearings.

Hearings were scheduled to begin and did begin on 23 September 1974, and were carried live by two radio stations, and three television stations had coverage and recording equipment present until the proceeding was interrupted by the restraining order.

Judge Rousseau found that the committee had subpoenaed more than a hundred witnesses, most of whom had been interviewed by committee counsel; that the witnesses had implicated some 30 officers; and that there was a reasonable probability that the witnesses would testify that certain officers had committed criminal offenses. The court further found the following: ". . . that as an investigative body, there is no necessity to have live radio and television coverage of the proceedings; that said live coverage is likely to prejudice some of the officers involved."

The court ordered that the committee give two days' notice to police officers who may be subjected to accusations of criminal activity by any witness; that the police officers have the right of cross-examination, and that "[t]he hearings shall remain open to the public and news media; however, there shall be no live radio or television coverage of the hearings and there shall be no voice or television recording devices in the hearing room, except for the recordings made by the official court reporter."

The defendants excepted only to that portion of Judge Rousseau's order which directs that "there shall be no live radio or television coverage of the hearings and there shall be no voice

or television recording devices in the hearing room"; and defendants appealed.

*Chambers, Stein & Ferguson by Adam Stein, for original plaintiffs.*

*Morgan, Byerly, Post & Herring by W. B. Byerly, Jr., for intervening plaintiff.*

*Tharrington, Smith & Hargrove by Wade H. Hargrove, Roger W. Smith and Peter E. Powell for defendants.*

CLARK, Judge.

On 3 February 1975, after this cause had been docketed and briefs filed, the original plaintiffs filed in this Court a motion to dismiss the appeal as moot.

The defendants with their response to said motion to dismiss filed a certified copy of selected excerpts from the minutes of Council meeting on 23 October 1974, wherein the hearings were "recessed" by the Chairman, who made the following statement: ". . . I feel that it would be some time before each of us might be able to digest the information that we might have. And I feel that maybe there's a possibility that maybe we might want to come back and ask further questions after digesting these notes. And now, I'm going to recess these hearings until further notice, and then we will have a statement to make."

The original plaintiffs with their motion to dismiss filed a certified copy of the minutes of the Council meeting on 27 November 1974, wherein it appeared that the Council met to receive the report of the Police Investigating Committee. The report contained detailed findings of negligence, misconduct and favoritism within the police department and noted that "we believe the City Manager's recent action in dismissing Chief Pritchett was justified." The meeting concluded with the statement by Mayor Clapp that "the Committee will not disband and will make their recommendations at a future time."

The defendants' response to the motion to dismiss as moot was filed in this Court on 27 February 1975. We assume that if the Committee had conducted an investigative hearing after making its report on 27 November 1974, the counsel for defendants would have with this response appropriately informed this Court of such hearing.

Leak v. High Point City Council

It appears that the question involved in this appeal may be moot for that the Police Investigating Committee of the City Council of High Point has probably concluded its investigative hearings, though it may still exist for the purpose of making recommendation based on its hearings.

[1] However, we do not deem it necessary to make a determination of whether the controversy has ceased to exist either from the record before us or after remanding to the Superior Court for further findings. The general rule that an appeal presenting a moot question will be dismissed is subject to some exceptions, one of which is that where the question involved is a matter of public interest the court has the duty to make a determination. 5 C.J.S., Appeal and Error, § 1354(1) (1958).

This case involves the right of city councils to "investigate the affairs of the city," to subpoena witnesses and compel the production of evidence to carry out that function as provided by G.S. 160A-80; and further involves the right of the city councils to "adopt reasonable rules" for the conduct of such investigative hearings as provided by G.S. 160A-81. The statutes were enacted in the 1971 Session of the General Assembly. The case is the first involving this enactment to reach us, and the determination of the issues involved is of public interest, unquestionably beneficial to the municipalities as a guide in the exercise of the investigative authority delegated by the legislature.

[2] On appeal, the plaintiffs do not contend that the said statutes are unconstitutional, nor that the rules of procedure adopted by the City Council of High Point relating to media coverage violate any of their constitutional rights. Therefore, we confine the issue before us to the authority of a city council in conducting investigative hearings to adopt rules providing not only for press but also for radio and television coverage.

Where the legislature makes a proper delegation of power to a municipality, the Courts may not interfere with the exercise of that power without a showing of manifest abuse. *Zopfi v. City of Wilmington*, 273 N.C. 430, 160 S.E. 2d 325 (1968); *Jones v. Hospital*, 1 N.C. App. 33, 159 S.E. 2d 252 (1968). There has been no showing by the plaintiffs that radio and television coverage would disrupt the hearings, would violate any constitutional rights of the plaintiffs, or would in any other way constitute a manifest abuse of this discretionary power delegated to the municipality.

Though radio and television coverage may not be necessary to the conduct of investigative hearings by municipalities, it does not follow that it is unreasonable to permit such coverage; conversely, radio and television coverage is reasonably consistent with the concept of a fully informed public, a concept which is receiving ever increasing support as the public becomes more fully informed.

The order of the Superior Court provides for press coverage and apparently bases its prohibition of radio and television coverage on the finding that "live coverage is likely to prejudice some of the officers involved." Different treatment of competing forms of communication is hardly justified by this finding.

We vacate the following portion of the preliminary injunction of 3 October 1974: "(1) [T]here shall be no live radio or television coverage of the hearings and there shall be no voice or television recording devices in the hearing room." And this cause is remanded to the Superior Court.

Vacated in part and remanded.

Judges PARKER and HEDRICK concur.