Yvonne GARCIA and Kathleen Zellar, Plaintiffs–Appellants,

v.

Kevin W. CONCANNON, Director of the Oregon Department of Human Resources, in his official capacity; and Mike Espy, Secretary of United States Department of Agriculture, Defendants–Appellees.

No. 94–35457.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1995.

Decided Oct. 4, 1995.

James F. Young, Oregon Legal Services, Coos Bay Oregon Legal Service, Coos Bay, OR, and Karen A. Berkowitz, Multnomah County Legal Aid Services, Portland, OR, for plaintiffs-appellants.

Janis C. Kestenbaum, United States Department of Justice, Washington, DC, for defendant-appellee Mike Espy.

Jas. J. Adams, Assistant Attorney General, Salem, OR, for defendant-appellee Concannon.

Before: SCHROEDER, REINHARDT and FERNANDEZ, Circuit Judges.

SCHROEDER, Circuit Judge:

This litigation concerns the validity of regulations promulgated by the Secretary of the United States Department of Agriculture, and the Director of the Oregon Department of Human Resources, to implement the anti-fraud provisions of the Food Stamp Act, 7 U.S.C. § 2015. The statute provides that any person found guilty of violating the Food Stamp Act "shall, immediately upon the rendering of such determination, become ineligible for further participation in the program" for a fixed disqualification period that increases in duration with each subsequent offense.[1]

The regulations promulgated by the Secretary of Agriculture, however, do not impose the disqualification period "immediately" after a determination of a violation, if the violator is (1) not currently participating in the Program or (2) already otherwise ineligible for Program benefits. Rather, the regulations defer the disqualification period for such violator until the violator later reapplies for benefits and is found eligible for them. The section addressing nonparticipants is 7 CFR § 273.16(a)(1):

> The disqualification period for nonparticipants at the time of the administrative disqualification or court decision shall be *deferred* until the individual applies for and is determined eligible for Program benefits.

(emphasis added).

Corollary provisions for otherwise ineligible violators are delineated in 7 CFR

---

1. Section 2015(b) provides in full as follows:
(b) **Fraud and misrepresentation; disqualification penalties; ineligibility period; applicable procedures**
    (1) Any person who has been found by any State or Federal court or administrative agency to have intentionally (A) made a false or misleading statement, or misrepresented, concealed or withheld facts, or (B) committed any act that constitutes a violation of this chapter, the regulations issued thereunder, or any State statute, for the purpose of using, presenting, transferring, acquiring, receiving, or possessing coupons or authorization cards shall, immediately upon the rendering of such determination, become ineligible for further participation in the program—
        (i) for a period of six months upon the first occasion of any such determination;
        (ii) for a period of one year upon the second occasion of any such determination; and
        (iii) permanently upon the third occasion of any such determination.
During the period of such ineligibility, no household shall receive increased benefits under this chapter as the result of a member of such household having been disqualified under this subsection.

(2) Each State agency shall proceed against an individual alleged to have engaged in such activity either by way of administrative hearings, after notice and an opportunity for a hearing at the State level, or by referring such matters to appropriate authorities for civil or criminal action in a court of law.
(3) Such periods of ineligibility as are provided for in paragraph (1) of this subsection shall remain in effect, without possibility of administrative stay, unless and until the finding upon which the ineligibility is based is subsequently reversed by a court of appropriate jurisdiction, but in no event shall the period of ineligibility be subject to review.
(4) The Secretary shall prescribe such regulations as the Secretary may deem appropriate to ensure that information concerning any such determination with respect to a specific individual is forwarded to the Office of the Secretary by any appropriate State or Federal entity for the use of the Secretary in administering the provisions of this section. No State shall withhold such information from the Secretary or the Secretary's designee for any reason whatsoever.

§§ 273.16(e)(8)(iii), (f)(2)(iii), & (g)(2)(ii), which all contain the following language:

> If the individual is not eligible for the Program at the time the disqualification period is to begin, the period shall be *postponed* until the individual applies for and is determined eligible for benefits.

(emphasis added).

Oregon Administrative Rules are substantially identical.[2]

Plaintiffs in this case, Yvonne Garcia and Kathleen Zellar, were both found to have violated the food stamp laws at a time when they were not otherwise eligible for any benefits. Years later they reapplied for benefits and were determined to be eligible, but were told that they still had to serve their six-month ineligibility period before benefits would be reinstated.

The district court found that the language of the regulations conflicted with the language of the statute. In this respect, the district court was clearly correct. The statute requires that the period of ineligibility begin "immediately" upon a determination of violation, while the regulations provide for "deferral" and "postponement."

The district court nevertheless concluded that the language of the anti-fraud provisions of the Food Stamp Act did not comport with Congress' true intent, whereas the Department of Agriculture's regulations did. Thus, the district court upheld the regulations and dismissed plaintiffs' § 1983 action for failure to state a claim. *See Columbia Pictures v. Professional Real Estate Inv.*, 866 F.2d 278, 280 n. 4 (9th Cir.1989), *aff'd*, — U.S. —, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (stating that the plain language of a statute is dispositive unless, *inter alia*, there is clearly a contrary legislative intent).

In so doing, the district court determined that the Congressional intent behind the Food Stamp Act's anti-fraud provisions was to "deter illegal food stamp activity." Be-

cause Garcia and Zellar would not actually have been deprived of any benefits had the disqualification period run "immediately" from the determination of violation, the district court concluded that an immediate imposition of the disqualification period would not have resulted in a meaningful penalty. The district court found that by contrast, deferring the imposition of the disqualification period would maximize the penalty Garcia and Zellar suffered, better serving Congress' goal of deterring further abuses.

We believe that the district court took a needlessly narrow view of Congress' intent. The operative language of the anti-fraud provision, imposing disqualification "immediately," was enacted in 1977. At that time, Congress expressly stated, in accompanying reports, that its purpose included simplification of administration as well as deterrence. H.R.Rep. No. 95–464, P.2 (1977), U.S.Code Cong. & Admin.News 1977 at 1978.

The Department of Agriculture's regulations are not consistent with the purpose of simplifying administration. If the disqualification period starts to run immediately, then the Food Stamp Program administrators need not concern themselves with the violator for the length of the penalty. But, if disqualification is deferred until the violator is found eligible—as the regulations provide—and the violator wants to serve the disability period as soon as possible, then the violator must keep reapplying for benefits on a regular basis until the violator is found eligible. Then, if the Program administration eventually deems the violator eligible (so that the disqualification period begins) the Program administration still must reassess the violator's eligibility after the disqualification period.

Moreover, to the extent that Congress wanted to deter abuses, the plain language of the anti-fraud provisions provides a sound mechanism for realizing Congress' vision; deterrence is most successful if punishment

---

**2.** The Oregon Administrative Rules 461–195–580(5) provides:

The period of disqualification begins the first of the month following the month in which the notice period ends. If the client is not eligible for benefits when the disqualification period is to begin, the disqualification period is postponed until the individual applies again and is determined eligible for benefits. In such a case, the disqualification period begins the first month the client is eligible again, even if that first month is a partial a month of benefits.

is prompt. *See* C. Torcia, *Wharton's Criminal Law, Vol. 1,* 16–17 (15th Ed.1993). Indeed, Congress said that the "increased use of administrative disqualifications should serve to deter program abuse as it is perceived that such abuses will be swiftly determined and punished." S.Rep. No. 97–139, P. 65 (1981) U.S.Code Cong. & Admin.News 1981 at 455. Similarly, the anti-fraud provisions state that "such periods of ineligibility shall remain in effect, without possibility of administrative stay...." 7 U.S.C. § 2015(b)(3). In sum, deferring punishment is contrary to the congressional intent to achieve deterrence through swift punishment.

Further, a period of immediate, mandatory disqualification serves as a real deterrent for a person who considers committing fraud, but who does not know what the next six months might bring in terms of eligibility. When analyzing whether a statutory scheme will achieve deterrence, the relevant question is not (as the district court intonates) how much punishment violators will actually suffer after committing fraud, but rather what punishment potential violators will consider when deciding whether to commit fraud. While hindsight reveals that immediate imposition of disqualification would not have actually deprived Garcia or Zellar of any benefits, Garcia and Zellar had no way of knowing this when they decided to commit fraud. From Garcia and Zellar's perspective, disqualification was thus a meaningful threat.

Additionally, the disqualification period counts as a "strike" against Garcia and Zellar. Since the anti-fraud provisions provide for a one year disqualification on the second offense and permanent disqualification on the third, the first "strike" is not something to be taken lightly.

The Secretary, however, also focuses on the phrase in the anti-fraud provisions stating that a person "shall ... become ineligible for further participation" upon a finding of violation. The Secretary contends that Congress used this language to mean that a person must first be otherwise eligible for participation in order to "become" ineligible for "further" participation. Garcia and Zellar's argument would be unassailable if Congress had used the word "be" instead of "become," and had eliminated the word "further." At the same time, the Secretary's argument would be much stronger if Congress had added that violators "otherwise eligible" or "currently participating" would "become ineligible for further participation." Congress did not do so. Quite to the contrary, the 1981 amendments eliminated the phrase "otherwise eligible," which was included in the 1977 version of the anti-fraud provisions. The 1977 version read:

> No individual who is a member of a household *otherwise eligible* to participate in the food stamp program shall be eligible to participate for (1) three months after such individual has been found by a State agency ... to have fraudulently used, presented, transferred, acquired, received, possessed, or altered coupons. Food Stamp Act of 1977, Pub.L. No. 95–113, 91 Stat. 958 (1977) (emphasis added).

If, as the Secretary urges, this 1977 language mandates deferring penalties until the violator becomes "otherwise eligible" for benefits, that meaning was destroyed with the deletion of the crucial phrase "otherwise eligible." *See Stewart v. Ragland,* 934 F.2d 1033, 1037 n. 6 (9th Cir.1991) ("When legislators delete language, we may assume that they intended to eliminate the effect of the previous wording").

Finally, the legislative history indicates that Congress was aware that some violators would fall beyond the ambit of the 1981 penalties, as it referred "households who are no longer participating in the food stamp program and thus [are] beyond the scope of the disqualification...." S.Rep. No. 97–139 P. 66 (1981) U.S.Code Cong. & Admin.News 1981 at 456.

Given that Congress (1) intended to simplify administration; (2) used the word "immediately"; (3) intended *prompt* deterrent action; (4) created a "strike" system; (5) had the "otherwise eligible" language available and deleted it, and (6) knew some violators would not be deprived by disqualification, we hold that the regulations deferring or postponing the period of ineligibility are inconsistent with congressional language and purpose. The judgment of the district court is

therefore REVERSED and the case RE-MANDED FOR ENTRY OF JUDGMENT IN FAVOR OF GARCIA AND ZELLAR.

REVERSED AND REMANDED.

REINHARDT, Circuit Judge, concurring separately:

I concur in Judge Schroeder's opinion for the court. Her analysis is irrefutable. I believe, however, that it is also unnecessary. "Immediately" means "immediately".

The statutory language is clear. So is the meaning of the statutory provision. As we and the district court both acknowledge, the regulation conflicts with the plain language of the statute. I would simply take the next step and hold the offending portion of the regulation unlawful.