SHERRY D. THOMAS, BOTH INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED, PLAINTIFF v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DEFENDANT AND SECRETARY, U.S. DEPARTMENT OF AGRICULTURE, DAN GLICKMAN, INTERVENOR-DEFENDANT

No. COA95-1310

(Filed 12 December 1996)

**1. Appeal and Error § 175 (NCI4th)— mootness does not preclude review—defendant voluntarily ceased practice—postponement of disqualification period—food stamp recipients**

Mootness does not preclude review of the merits where the Department of Human Resources voluntarily ceased its challenged practice of postponing the disqualification period of food stamp recipients in the face of plaintiff's appeal and in the face of the USDA's concordant decision to cease its similarly challenged practice. The Court of Appeals had previously ruled in *Anderson v. N.C. Dept. of Human Resources*, 109 N.C. App. 680, 428 S.E.2d 267 (1993), that the Department wrongly postponed recipients' food stamp fraud disqualification period in violation of 7 U.S.C. § 2015(b)(1), which requires that those disqualification periods begin immediately.

**Am Jur 2d, Appellate Review §§ 646-649.**

**2. Constitutional Law § 12 (NCI4th); Social Services and Public Welfare § 20 (NCI4th)— Court of Appeals decision—agency's failure to apply to others—violation of separation of powers provision**

The NCDHR violated the separation of powers provision of Art. I, § 16 of the N.C. Constitution by applying a decision of the Court of appeals—that USDA and NCDHR regulations permitting postponement of the one-year food stamp disqualification period for fraud conflicted with the Food Stamp Act—only to the plaintiff in that case and not to others similarly situated.

**Am Jur 2d, Constitutional Law §§ 294-359; Welfare Laws §§ 26-31.**

**3. Constitutional Law § 2 (NCI4th)— division of powers—authority to interpret Food Stamp Act**

Under the federal system, the states possess sovereignty concurrent with that of the Federal Government subject only to

limitations imposed by the Supremacy Clause. The Court of Appeals acted within its authority in interpreting the Food Stamp Act and consequently invalidating the USDA's conflicting regulation where there was no evidence that Congress had divested the state courts of jurisdiction.

**Am Jur 2d, Constitutional Law §§ 291 et seq.; Welfare Laws §§ 26-31.**

4. **Courts § 137 (NCI4th); Social Services and Public Welfare § 20 (NCI4th)— interpretation of federal act—deference to federal agency not required**

The Court of Appeals was not required to defer to the USDA's interpretation of the Food Stamp Act but could declare a USDA regulation invalid as being in conflict with the Act.

**Am Jur 2d, Conflict of Laws §§ 14, 15; Welfare Laws §§ 26-31.**

5. **Social Services and Public Welfare § 20 (NCI4th)— argument not valid—effect on federal funding—Department must obey Court's order**

There was no validity to the Department of Human Resources' argument that it could not acquiesce in the Court of Appeals' interpretation of the Food Stamp Act because to do so would perhaps endanger some amount of federal funding or at least require the agency to undertake the somewhat onerous process of securing the necessary funding waiver from the USDA. The Department must obey duly enacted laws and duly entered court orders just as any citizen must.

**Am Jur 2d, Welfare Laws §§ 26-31.**

Judge WALKER dissenting.

Appeal by plaintiff from order entered 4 October 1995 by Judge Preston Cornelius in Guilford County Superior Court. Heard in the Court of Appeals 27 August 1996.

On 24 August 1989, the Guilford County Department of Social Services ("DSS") issued a decision determining that Edith Anderson fraudulently failed to report additional household income on her food stamp application dated 2 February 1988. Because of this violation, DSS notified Edith Anderson that she would be disqualified from receiving food stamps for a period of one year. Over one year later, in

January 1991, Ms. Anderson reapplied for food stamps and was found income eligible to participate in the program. DSS then notified Ms. Anderson, however, that she would have to wait one additional year to receive food stamps because the disqualification period did not begin until she had reapplied and been determined income eligible for food stamps.

Ms. Anderson exhausted her administrative remedies and, on 26 July 1991, filed a complaint in Guilford County Superior Court alleging that the North Carolina Department of Human Resources ("NCDHR") had wrongly postponed her food stamp fraud disqualification period in violation of 7 U.S.C. § 2015(b)(1), which requires that those disqualification periods begin immediately. Upon notice of a suit against it in State court, the NCDHR is required pursuant to 7 C.F.R. § 272.4(e) to notify the United States Department of Agriculture ("USDA") to afford the USDA an opportunity to seek removal of the case to federal court. When the NCDHR fails to properly notify the USDA, as it did here, the NCDHR is not entitled to any further federal contribution for any amount awarded in the State court action. 7 C.F.R. § 276.2(b)(5)(ii).

The case remained in State court and both parties filed motions for summary judgment. The trial court heard the parties' motions on 4 November 1991, and on 10 January 1992, granted defendant NCDHR's motion for summary judgment and denied plaintiff's motion. On appeal, this Court reversed the trial court and, on 20 April 1993, issued an opinion holding that USDA regulation 7 C.F.R. § 273.16(e)(8)(iii), which allowed postponement of the food stamp disqualification period, impermissibly conflicted with the Food Stamp Act. *Anderson v. N.C. Dept. of Human Resources*, 109 N.C. App. 680, 428 S.E.2d 267 (1993) (*"Anderson I"*). There was no appeal from this Court of Appeals decision.

Thereafter, the NCDHR applied *Anderson I* only to plaintiff and failed to apply the rule announced in *Anderson I* to all others similarly situated. In response, plaintiff filed a rulemaking petition pursuant to G.S. 150B-20(a) seeking the adoption of a proposed rule which would adopt the *Anderson I* holding. After this petition was denied, plaintiff filed a class action complaint in Guilford County Superior Court on 7 January 1994 seeking judicial review of the denial of her rulemaking petition. Plaintiff's complaint also sought an injunction to ensure the NCDHR's future compliance with *Anderson I* and other opinions of the courts of this State.

**THOMAS v. N.C. DEPT. OF HUMAN RESOURCES**

[124 N.C. App. 698 (1996)]

Specifically, plaintiff's complaint requested, *inter alia*, that the court:

1. Reverse the defendant's December 8, 1993 final agency decision and order it to adopt in its state regulations and Food Stamp Manual the rule requested by Plaintiffs in their Petition for Rule Making.

2. Issue a mandatory injunction requiring Defendant to reopen the cases of all class members as of the April 20, 1993 date of the filing of the decision in Anderson, supra, and issue the food stamps that they should have received had their disqualification periods commenced immediately.

3. Issue a Declaratory Judgment under G.S. § 1-253 that the Defendant is required to comply with the principles established in the decision in Anderson, supra, in subsequent cases involving similar material facts arising before the agency.

Defendant NCDHR filed its answer to plaintiff's complaint on 9 February 1994, and at that time notified the Secretary of Agriculture. On 10 March 1994, the Secretary of Agriculture filed a motion to intervene, which was granted on 6 April 1994 after the trial court determined that the USDA's interests were not adequately protected by the existing parties.

In anticipation of the trial court granting his motion to intervene, the Secretary of Agriculture filed an answer on 31 March 1994. The Secretary's answer included a motion to dismiss alleging that plaintiff's suit failed to state a claim upon which relief could be granted. Thereafter, on 13 April 1994, the Secretary filed a motion in the United States District Court for the Middle District of North Carolina seeking removal of the suit to federal court. Plaintiff Sherry D. Thomas then moved the federal court to intervene and join Edith Anderson as a named plaintiff in the case. On 7 July 1994, the federal district court substituted plaintiff Sherry D. Thomas for Edith Anderson as named plaintiff, and on 3 May 1995, the federal district court remanded the case to the State Superior Court after concluding that only the State courts had jurisdiction to enforce their own orders. *Thomas v. N.C. Dept. of Human Resources*, 898 F. Supp. 315 (M.D. N.C. 1995).

On 3 August 1995, plaintiff filed a motion to certify a class and a motion for summary judgment against defendant NCDHR. On 15 September 1995, defendant Secretary filed a motion for summary

judgment and, three days later, defendant NCDHR filed a motion to dismiss. Without ruling on plaintiff's motion to certify a class, the trial court denied plaintiff's motion for summary judgment and granted summary judgment in favor of defendant Secretary and dismissed plaintiff's claims against defendant NCDHR on 4 October 1995.

Plaintiff appeals.

*Central Carolina Legal Services, Inc., by Stanley B. Sprague, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert J. Blum and Associate Attorney General Elizabeth L. Oxley, for defendant-appellee North Carolina Department of Human Resources.*

EAGLES, Judge.

In *Anderson I*, we determined "that 7 U.S.C.A. § 2015(b)(1) (1991) requires that food stamp disqualification periods begin immediately upon a finding that a violation has been committed." 109 N.C. App. at 682, 428 S.E.2d at 268. In reaching this conclusion, the *Anderson I* court supplied the following reasoning:

The Food Stamp Act of 1977 provides that:

> Any person who has been found by any State or federal court or administrative agency to have intentionally (A) made a false or misleading statement . . . for the purpose of . . . receiving . . . coupons . . . *shall, immediately upon the rendering of such determination, become ineligible* for further participation in the program . . . (ii) for a period of one year upon the second occasion of any such determination.

7 U.S.C.A. 2015(b)(1) (1991) (emphasis added). The federal regulations interpreting this statute, enacted by the Secretary of Agriculture pursuant to 7 U.S.C.A. 2013(c) (1991), however, postpone the penalty period mandated by the statute. 7 C.F.R. 273.16(e)(8)(iii) (1992) provides that "[i]f the individual is not eligible for the Program at the time the disqualification period is to begin, the period shall be postponed until the individual applies for and is determined eligible for benefits. . . ."

In reviewing the validity of an agency's regulation, a court "must first determine if the regulation is consistent with the lan-

guage of the statute." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 100 L.Ed.2d 313, 324 (1988). Both the courts and the agencies "must give effect to the unambiguously expressed intent of Congress." *Id.* (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 81 L.Ed.2d 694, 703, *reh'g denied*, 468 U.S. 1227, 82 L.Ed.2d 921 (1984)). Therefore, if the language of the statute is clear and unambiguous, and the regulation is contrary to that language, "that is the end of the matter" and the regulation must be declared invalid. *See K Mart*, 486 U.S. at 291-92, 100 L.Ed.2d at 324; *Chevron*, 467 U.S. at 843, 81 L.Ed.2d at 703. While traditionally the courts pay deference to an agency regulation, such deference is inappropriate where the regulation alters the clearly expressed intent of Congress. *K Mart*, 486 U.S. at 291, 100 L.Ed.2d at 324. Only where the language of the statute is unclear, ambiguous, or fails to answer the specific question at issue should deference be paid to a contested agency interpretation. *See Chevron*, 467 U.S. at 842-43, 81 L.Ed.2d at 703.

The specific issue in the case at bar is clearly resolved by the statute. The language of the statute requires a penalty of a specified period of time, to commence immediately upon a determination that a food stamp recipient has violated the provisions of the Food Stamp Act.

*Anderson I*, 109 N.C. App. at 682-83, 428 S.E.2d at 268-69. Since *Anderson I*, and during the pendency of this appeal, the USDA amended its regulations to eliminate the postponement period declared invalid in *Anderson I*. The current appeal arises and persists because, in the period between the issuance of *Anderson I* on 20 April 1993 and the effective date the USDA changed its regulations on 1 February 1996, the NCDHR refused to apply the rule of *Anderson I* to other similarly situated plaintiffs; instead, the NCDHR continued to enforce its regulations interpreting the Food Stamp Act in contravention of the opinion of this Court.

## I.

Plaintiff first argues that each member of the class affected is entitled to the Food Stamps they would have received between 20 April 1993 and 1 February 1996 had the NCDHR uniformly applied *Anderson I*. Plaintiff bases this argument on the principle first articulated in *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287 (1970), that "[f]ood-stamp benefits . . . 'are a matter of statutory entitlement for

persons qualified to receive them.' " *Atkins v. Parker*, 472 U.S. 115, 128, 86 L. Ed. 2d 81, 92 (1985) (quoting *Goldberg*, 397 U.S. at 262, 25 L. Ed. 2d at 295). We need not further address plaintiff's argument here, however, because defendant NCDHR has conceded in a response filed here to an order of this Court that the members of the class identified by plaintiff are entitled to the full monetary compensation prayed for by plaintiff. Subject to some further refinement, the NCDHR has established a compensation plan to this effect this goal with a target completion date of 31 March 1997.

Plaintiff nevertheless expresses concern regarding the administration of the NCDHR's proposed compensation plan. Specifically, plaintiff worries that the NCDHR's plan will afford each member of the class affected only an average compensation rate, rather than affording each an amount specifically tailored to that person's individual circumstances. We note, however, that no class has of yet been certified by the trial court in this action and that no potential claimant's rights have been prejudiced. If an individual is inadequately compensated, that person retains every right to pursue their claim administratively before the NCDHR and thereafter in the courts of this State.

II.

Plaintiff next argues that the North Carolina Constitution requires the NCDHR to acquiesce in statutory interpretations made by North Carolina's appellate courts to the extent that they conflict with the NCDHR's interpretations. Plaintiff contends that the NCDHR and other administrative agencies of the State must give full effect to the statutory constructions of this court both as to the named litigants and as to all persons similarly situated. We agree.

A.

[1] Prior to addressing the merits of plaintiff's argument, we note that a question of mootness arises here. Now that the USDA has revised its regulations in accordance with this Court's order in *Anderson I* to eliminate the disqualification postponement requirement, defendant NCDHR assures this Court that it has voluntarily ceased its refusal to apply the principles of *Anderson I* equally to all similarly situated persons. Defendant argues that, by voluntarily ceasing to apply *Anderson I* uniformly, the challenged conduct no longer exists to be challenged and the case is rendered moot. In turn, plaintiff counters that an exception to the mootness doctrine applies

and that we must therefore reach the merits of this issue. We agree with plaintiff's contention that the mootness doctrine does not preclude our review of the merits here.

For over a century, both the courts of this State and the federal courts have generally refrained from addressing questions deemed moot. *See, e.g., Crawley v. Woodfin*, 78 N.C. 4, 4 (1878); *Mills v. Green*, 159 U.S. 651, 653, 40 L. Ed. 293, 293-94 (1895). In State court, the exclusion of moot questions is considered "a principle of judicial restraint . . .," *N.C. Council of Churches v. State of North Carolina*, 120 N.C. App. 84, 88, 461 S.E.2d 354, 357 (1995), *aff'd*, 343 N.C. 117, 468 S.E.2d 58 (1996), while in federal court the mootness doctrine is considered to have constitutional jurisdictional underpinnings. *E.g., Honig v. Doe*, 484 U.S. 305, 317-18, 98 L. Ed. 2d 686, 703 (1988). Despite this difference in origin, the limits of the mootness doctrine are articulated almost identically in the federal courts and the courts of this State. *E.g., In re Jackson*, 84 N.C. App. 167, 170-71, 352 S.E.2d 449, 452 (1987) (citing *Moore v. Ogilvie*, 394 U.S. 814, 816, 23 L. Ed. 2d 1, 4 (1969)). If anything, the mootness doctrine is less restrictive in the courts of North Carolina than in the federal courts. *See, e.g., Matthews v. Dept. of Transportation*, 35 N.C. App. 768, 770, 242 S.E.2d 653, 654 (1978).

"The general rule is that an appeal presenting a question which has become moot will be dismissed." *Matthews*, 35 N.C. App. at 770, 242 S.E.2d at 654. This general rule, however, is subject to at least five well-known exceptions. *E.g., City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 71 L. Ed. 2d 152, 159 (1982) (holding that "a defendant's voluntary cessation of a challenged practice does not deprive a . . . court of its power to determine the legality of the practice."); *In re Jackson*, 84 N.C. App. at 170-71, 352 S.E.2d at 452 (citing *Moore*, 394 U.S. at 816, 23 L. Ed. 2d at 4) (holding that courts may review cases that are otherwise moot but that are "capable of repetition, yet evading review."); *Matthews*, 35 N.C. App. at 770, 242 S.E.2d at 654 (citing *Leak v. High Point City Council*, 25 N.C. App. 394, 397, 213 S.E.2d 386, 388 (1975)) (holding that the court has a "duty" to address an otherwise moot case when the "question involved is a matter of public interest."); *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977) (citing *Sibron v. New York*, 392 U.S. 40, 55-56, 20 L. Ed. 2d 917, 930-31 (1968)) (stating that a case must be decided, "even when the terms of the judgment below have been fully carried out, if collateral legal consequences of an adverse nature can reasonably be expected to result therefrom . . . ."); *Simeon v. Hardin*, 339

N.C. 358, 371, 451 S.E.2d 858, 867 (1994) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 43 L. Ed. 2d 54, 63 n.11 (1974)) (recognizing a "narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class.").

While we believe that both the "public interest" and the "capable of repetition, yet evading review" exceptions also apply to the case at bar, we conclude the most applicable exception is that which provides for review of cases where a defendant voluntarily ceases its illegal conduct during the pendency of the appeal. *Quern v. Mandley*, 436 U.S. 725, 731-32, 56 L. Ed. 2d 658, 665-66 (1978). As the United States Supreme Court stated in *City of Mesquite*:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a . . . court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question of whether a court should exercise its power to enjoin the defendant from renewing the practice, *but that is a matter relating to the exercise rather than the existence of judicial power.*

455 U.S. at 289, 71 L. Ed. 2d at 159 (emphasis added). The NCDHR here has voluntarily ceased its challenged practice in the face of this appeal and in the face of the USDA's concordant decision to cease its similarly challenged practice. If we were to decide that we must dismiss this or any substantially similar case as moot, defendants like the NCDHR here could virtually always manage to cease their offending practices in time to avoid meaningful review. Having ceased their practices and secured dismissal of the pending litigation, defendants would then be, as defendants would be here, "free to return to [their] old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 97 L. Ed. 1303, 1309 (1953). Accordingly, we decline to dismiss as moot plaintiff's appeal on this issue.

B.

[2] Turning now to the merits, Article I, section 6 of the North Carolina Constitution is entitled "[s]eparation of powers" and provides that "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. CONST. art. I, § 6. We hold that the challenged conduct on the part of the NCDHR here violates this section of the State constitution.

**THOMAS v. N.C. DEPT. OF HUMAN RESOURCES**

[124 N.C. App. 698 (1996)]

In *State ex rel. Wallace v. Bone*, 304 N.C. 591, 286 S.E.2d 79 (1982), our Supreme Court engaged in an extensive historical analysis of the separation of powers doctrine before concluding "[t]here should be no doubt that the principle of separation of powers is a cornerstone of our state and federal governments." *Id.* at 601, 286 S.E.2d at 84. The *Wallace* court recognized that, in addition to Article I, section 6, other constitutional provisions reinforce the essential nature of the requirement that our State government's powers be divided among separate and distinct branches.

> Section 1 of Article II of our present constitution provides that "[t]he legislative power of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives." Section 1 of Article III provides that "[t]he executive power of the State shall be vested in the Governor." Section 1 of Article IV provides:
>
>> The judicial power of the State shall, except as provided in Section 3 of this Article, be vested in a Court for the Trial of Impeachments and in a General Court of Justice. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government, nor shall it establish or authorize any courts other than as permitted by this Article.

*Wallace*, 304 N.C. at 595-96, 286 S.E.2d at 82.

This commitment to the principal of separation of powers exemplified in our State constitution is virtually identical in practice to that shown at the federal level. *E.g., id.* at 598, 286 S.E.2d at 83. Like the federal courts, we have long recognized that "[t]he ultimate purpose of this separation of powers is to protect the liberty and security of the governed." *Airports Authority v. Citizens for Noise Abatement*, 501 U.S. 252, 272, 115 L. Ed. 2d 236, 256 (1991). Our constitutional system of separated powers and checks and balances is a "self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Buckley v. Valeo*, 424 U.S. 1, 122, 46 L. Ed. 2d 659, 746 (1976).

> The essence of the separation of powers concept . . . is that each branch, in different ways, within the sphere of its defined powers and subject to the distinct institutional responsibilities of the others, is essential to the liberty and security of the people. Each

branch, in its own way, is the people's agent, its fiduciary for certain purposes.

*Airports Authority*, 501 U.S. at 272, 115 L. Ed. 2d at 256 (quoting *Levi, Some Aspects of Separation of Powers*, 76 Colum.L.Rev. 385-386 (1976)).

Separation of powers is violated when "[f]iduciaries do not meet their obligations by arrogating to themselves the distinct duties of their master's other agents." *Id.* Traditionally, at both the federal and state level, "[v]iolations of the separation-of-powers principle have been uncommon because each branch has traditionally respected the prerogatives of the other two." *Airports Authority*, 501 U.S. at 272, 115 L. Ed. 2d at 256; *Wallace*, 304 N.C. at 599, 286 S.E.2d at 83-84. Nevertheless, we are sensitive to our responsibility to enforce the principle when necessary, as we do here.

This is not to say that the separation of powers clause in our Constitution requires or even authorizes us to broadly and generally supervise the administrative and executive agencies of our government. On the contrary, as we recognized in *Burton v. Reidsville*, 243 N.C. 405, 408, 90 S.E.2d 700, 703 (1956),

> we operate under the philosophy of the separation of powers, and the courts were not created or vested with authority to act as supervisory agencies to control and direct the action of executive and administrative agencies or officials. So long as officers act in good faith and in accord with the law, the courts are powerless to act—and rightly so.

*Id.* This standard of deference, however, does not render us powerless here. Deference is inappropriate where, by attempting to arrogate to itself the distinct duties of the judiciary in having the final word in interpreting statutes, the NCDHR has violated separation of powers and acted in disregard of the law.

Similar to the deference we apply here at the State level, the federal courts also defer to agency regulations in a wide variety of contexts. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843-44, 81 L. Ed. 2d 694, 703, *reh'g denied*, 468 U.S. 1227, 82 L. Ed. 2d 921 (1984). Under this standard of deference set out in *Chevron*, courts reviewing federal agency regulations must nevertheless first determine if the regulation in question "is consistent with the language of the statute." *K Mart Corp. v. Cartier, Inc.*, 486 U.S.

281, 291, 100 L. Ed. 2d 313, 324 (1988). This minimal level of oversight is central to the doctrine of separation of powers as "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60, 73 (1803); *See, e.g., Smith v. Keator*, 21 N.C. App. 102, 106, 203 S.E.2d 411, 415, *aff'd*, 285 N.C. 530, 206 S.E.2d 203 (1974).

When a court determines that an agency's regulation is contrary to statute, the agency must acquiesce to that court's interpretation and apply the court's interpretation uniformly thereafter within the jurisdictional bounds of the interpreting court. *E.g., Hyatt v. Heckler*, 807 F.2d 376, 379 (4th Cir. 1986), *cert. denied*, 484 U.S. 820, 98 L. Ed. 2d 41 (1987); *Hyatt v. Sullivan*, 899 F.2d 329, 332 (4th Cir. 1990). "The separation of powers doctrine requires administrative agencies to follow the law of the . . . courts [which have] jurisdiction over the cause of action." *Heckler*, 807 F.2d at 379.

> An agency of the government entrusted with the administration and enforcement of a . . . statute . . . is bound to pay due respect to the decisions of this Court in matters brought before it from said agency and has no right or authority to disregard such decisions.
>
> If the agency is dissatisfied with any ruling or decision of this Court, it should seek its reversal or modification by the legal media provided by our laws for the review thereof.
>
> Absent any such reversal or modification, [and absent appropriate legislative relief,] the refusal or failure to follow such decisions in future cases appears to be contemptuous.

*Flores v. Secretary of Health, Education & Welfare*, 228 F. Supp. 877, 878 (D.P.R. 1964).

In sum, we hold that the separation of powers doctrine requires that the NCDHR and all other administrative agencies of the state give full effect to orders of this Court and acquiesce in the statutory and constitutional interpretations determined by this Court and by our Supreme Court. It is well-established that when an appellate court of this State determines that a statute enacted by the General Assembly is facially unconstitutional, that statute may not be subsequently enforced against any citizen or entity. An order of this Court proclaiming a statute unconstitutional applies not only to the named litigants, it voids the statute entirely as if it no longer existed. Once a statute is determined to be unconstitutional, no private citizen or

division of the State may take any further action pursuant to the provisions of that unconstitutional statute.

The same analysis holds true here, where we determined, not that a statute was unconstitutional, but that a federal administrative regulation and its corresponding state regulation, impermissibly conflicted with the language and intent of the federal enabling statute. In the same way a statute that conflicts with the constitution can have no effect, a regulation that conflicts with its enabling legislation can also have no effect. An order of this Court determining that a regulation impermissibly conflicts with the enabling statute has the effect of invalidating or voiding the regulation, and no action whatsoever by the administrative agency can breath life into the invalidated regulation absent reversal or modification of this Court's order by a higher court or absent legislative action sufficiently altering the enabling act.

## III.

We now address defendant NCDHR's contention that a federal administrative regulation represents authority over its actions superior to an order of this Court. Defendant advances this argument to justify its refusal to apply this Court's decision in *Anderson I* to all similarly situated claimants. On the facts of this case, we are not persuaded.

Defendant NCDHR's argument here seems to raise two separate questions: (1) whether as a matter of federalism, we have the power to interpret the Food Stamp Act, and (2) whether as a matter of deference we may interpret the Food Stamp Act contrary to an interpretation previously advanced by a federal administrative agency, here the USDA.

## A.

[3] Defendant NCDHR's argument here presents primarily a question of division of powers rather than of separation of powers. It is well-settled that "under our federal system, the States possess sovereignty concurrent with that of the Federal Government subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458, 107 L. Ed. 2d 887, 894 (1990).

Under this system of dual sovereignty, . . . state courts have inherent authority . . . to adjudicate claims arising under the laws of the United States. . . . [I]f exclusive jurisdiction be neither

express or implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it.

*Id.* at 458-59, 107 L. Ed. 2d at 894. We conclude here that this Court, in *Anderson I*, acted within its authority in interpreting the Food Stamp Act and consequently invalidating the USDA's conflicting regulation. We note here that there is no evidence that Congress has divested the State courts of jurisdiction in any way relevant to the case at bar. *See, e.g., Tafflin*, 493 U.S. at 459-60, 107 L. Ed. 2d at 894-95.

The established law as stated here places no new and undue burden on either the USDA or the NCDHR in carrying out their duties administering the provisions of the Food Stamp Act. Federal administrative agencies regularly must deal with differing statutory interpretations among the federal circuits. Often these differing interpretations require adjustments in the agency's administration among the circuits with the differences confined to the geographic boundaries of the circuits in question. Here again, it is irrelevant that an order of this Court may require the USDA to administer the Food Stamp Act differently in North Carolina than it may elsewhere across the country. The remedy available to the USDA and the NCDHR is to seek reversal or modification from a higher court or to secure appropriate legislative relief.

B.

[4] In *Anderson I*, we declared invalid a USDA regulation interpreting a provision of the Food Stamp Act (codified at 7 U.S.C. § 2015(b)(1)). *Anderson I*, 109 N.C. App. at 682-83, 428 S.E.2d at 269. The NCDHR had enacted an identical regulation pursuant to its role as administrator of the Food Stamp Act at the State level. *Anderson I* served to invalidate that identical State regulation as well because it also impermissibly conflicted with the clear and unambiguous language of the Food Stamp Act. *Id.* In some instances, we would be required to defer to the agency's contested interpretation and we would lack authority to do otherwise. *See Chevron*, 467 U.S. at 843-44, 81 L. Ed. 2d at 703. We correctly concluded in *Anderson I*, however, that this standard of federal deference did not bar our review of the suspect regulation there. *See Garcia v. Concannon*, 67 F.3d 256, 259 (9th Cir. 1995). We recognized that judicial deference is inappropriate where the challenged regulation "alters the clearly expressed intent of Congress." *Anderson I*, 109 N.C. App. at 682, 428

S.E.2d at 269 (citing *K Mart*, 486 U.S. at 291, 100 L. Ed. 2d at 324). Accordingly, having correctly concluded in *Anderson I* that *Chevron* deference did not bar our review, we need not address this issue again here.

## IV.

[5] Finally, we address defendant NCDHR's contention, made at oral argument, that it could not acquiesce in this Court's statutory interpretation because to do so would perhaps endanger some amount of federal funding or at least require the agency to undertake the somewhat onerous process of securing the necessary funding waiver from the USDA. We find this contention patently contrary to virtually every ideal upon which our government stands. Under our system of government, the NCDHR must obey duly enacted laws and duly entered court orders just as any citizen must. That the NCDHR might lose some federal funding because of this constitutionally required obedience is of no import—the NCDHR's recourse is through constitutionally established judicial or legislative processes.

Reversed and remanded.

Judge McGEE concurs.

Judge WALKER dissents.

Judge WALKER dissenting.

I respectfully dissent from the majority opinion in that I believe this case has been rendered moot by the USDA amending its regulations to eliminate the postponement period declared invalid in *Anderson I*. This case does not fit into the exception to the mootness doctrine that allows for review when a defendant voluntarily ceases illegal conduct during the pendency of an appeal, as defendant NCDHR did not voluntarily cease its refusal to apply *Anderson I*. By amending its regulations, the USDA mandated that defendant NCDHR uniformly apply *Anderson I*, and defendant NCDHR was required to obey this mandate according to 7 U.S.C.A. § 2014(b) (1988), which declares that state eligibility standards must be consistent with federal eligibility standards. In addition, defendant NCDHR's failure to apply *Anderson I* between 20 April 1993 and 1 February 1996 cannot be said to amount to illegal conduct. The USDA did not amend its regulations until 1 February 1996, and up to that

time, defendant NCDHR was simply enforcing its regulations in the absence of further directives from the USDA.

This case also does not fit into the "capable of repetition, yet evading review" exception to the mootness doctrine. This exception applies if "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711, *disc. review denied*, 324 N.C. 543, 380 S.E.2d 770 (1989) (citations omitted). Because the USDA amended its regulations to eliminate the postponement period complained of in *Anderson I*, defendant NCDHR is bound to follow USDA regulations and is not "free to return to [its] old ways." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 97 L. Ed. 2d 1303, 1309 (1953). It is therefore unlikely that plaintiff will be subjected to the same action again.

Finally, plaintiff's concern regarding defendant NCDHR's proposed compensation plan is premature. As the majority states, any member of the class affected by the compensation plan retains the right to pursue their claim administratively before defendant NCDHR if that member's rights are prejudiced.

For the above reasons, I believe this appeal should be dismissed as moot.